H. M. CUSHMAN AND WIFE v. J. W. FLANAGAN.

1. RIGHT TO TRIAL BY JURY.— Under the new jury law, (Session Laws, Acts of 1876, p. 171,) in cases filed before its passage, a jury must be demanded before the jury for the term has been discharged. It was not error to refuse to impanel a new jury after all juries for the term had been discharged, and no demand had been made for a jury prior to such discharge.
2. VENDOR'S LIEN.—Where the facts relied on as creating the lien are disputed, and there is evidence from which the lien may be found, this court will not reverse.
3. CASE APPROVED.—Flanagan v. Cushman, 48 Tex., 241, discussed and approved.

APPEAL from Rusk.  Tried below before the Hon. A. J. Booty.

This is a second appeal in this case.  In 48 Texas, 242, 243, a full statement of the facts appears.

On the new trial, besides the documentary evidence, consisting of deed, note, and mortgage, the following testimony was given:

Webster Flanagan testified that on the 6th of December, 1870, Cushman made and delivered to him the note and deed of trust described in the plaintiffs' petition; that witness delivered to Garland the same day a draft on Phelps & Co. for $3,823.15, in part payment of a note he held against Cushman and Nelms for the purchase-money of the same land; that the same day Garland executed to Cushman a deed to said land; that Garland, Cushman, and witness agreed then that witness was to have the same lien on the land that Garland had for the security of the note of Cushman and Nelms; at that time Garland delivered the Cushman and Nelms note to Cushman; that it was agreed by all that witness was subrogated to all rights and liens on the land as a security for Cushman's note, which Garland had; that they all were that day at the law office of Parsons & Jones, where and when an instrument was drawn up and signed by Cushman and Garland and witnessed by Parsons & Jones, which witness heard read; that the deed signed by Garland and wife was not delivered to Cushman until the draft on Phelps & Co. was paid; thinks he drew the draft at the office of Parsons & Jones; witness thinks he asked Parsons, while in that office, if it was necessary for Mrs. Cushman to sign the mortgage, and he replied that it was not.  The defendants objected to everything said by Webster Flanagan as to his being subrogated to all the rights and liens of Garland for the amount of the draft drawn by him, because no parol contemporaneous agreement can be received to vary or add to the note and mortgage already received in evidence, which objection was overruled by the court; to which the defend-

ants excepted.   The evidence of Webster Flanagan was in response to this question : Was there any agreement by you, Cushman, and Garland as to what liens and rights you should have ?   And defendants objected as above.

Garland's deed to Cushman was acknowledged for record January 30, 1871.

H. M. Cushman testified that in November, 1870, he came to Henderson to make arrangements to pay Garland the balance due of the purchase-money he owed for the land; he met with Webster Flanagan on the street in Henderson, and told him he wanted money; Flanagan replied that he could have any amount he wanted; told Flanagan he would give him security; Flanagan said that was understood; on the 6th of December, 1870, witness and Flanagan went to Tinsley's store, in Henderson, where the draft was drawn; thinks it was written by Thompson Camp; it was drawn in favor of Garland, at witness' request, to save the trouble of transferring it; Garland was not present at Tinsley's store when the draft was drawn; witness carried the draft to the office of Parsons & Jones and delivered it there to Garland; has no recollection of seeing Flanagan there at any time; witness never agreed that Flanagan should have a vendor's lien on the land in suit, nor did he tell Flanagan or Garland so. Cross-examination: The balance of the purchase-money for the land was paid by the draft and the cotton mentioned in the agreement between witness and Garland; he executed the note and mortgage to secure the amount of the draft loaned to him by Flanagan; witness received the deed from Garland and wife to him and the note of witness and Nelms to Garland at the date of the acknowledgment of that deed, and not before; after witness delivered the mortgage to Flanagan, Flanagan read it and made no objection to it.   Witness was asked if he had not said to plaintiff's house since the suit was brought that he did not know he could claim a homestead in the land until W. W. Spivy told him so?   To which witness answered that he did not recollect having used such

language.  He then detailed what he did say, but it is not material.  Witness was satisfied, from information, that Garland was dead.

The plaintiff testified, with other immaterial matter, that Cushman told him, since this suit was brought, at witness' house, that he did not know he could claim a homestead in the land until Billy Spivy informed him that he could.

The defendants demanded a jury trial, which was refused, under these circumstances: The defendants, when the cause was called for trial, demanded a jury.  Before the case was called in its order the defendants had deposited with the clerk of the District Court a jury fee of $5.  The plaintiff objected, because when the docket was sounded to determine what causes should be placed upon the jury trial docket the defendants did not then demand a jury.  The juries for the term had been discharged.  The objection was sustained by the court, and defendants excepted.

Judgment was rendered for plaintiff for amount of note and foreclosure of vendor's lien.  Defendants appealed.

*Drury Field* and *Martin Casey,* for appellants.

I.  Where a mistake would be relieved in equity, application to correct that mistake must be made as soon as discovered, and the mistake must be fully and clearly proved.  (Horan *v.* Long, 11 Tex., 233; Story's Eq. Jur., secs. 152, 153; Bailey *v.* Bailey, 8 Humph., 230; Trout *v.* Goodman, 7 Ga., 385; United States *v.* Munroe, 5 Mas., 577; Reese *v.* Wyman, 9 Ga., 436; Donley *v.* Brush, 44 Tex., 7; O'Neil *v.* Teague, 8 Ala., (N. S.,) 349.)

II.  In suits at common law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved.  (Const. of U. S., art. 7, Paschal's Dig., p. 22.)

The right of trial by jury shall be inviolate.  (Const. of State, art. 1, sec. 15.)

The defendants had deposited a jury fee with the clerk of the District Court before this case was called for trial.  By section 17, Acts of 1876, approved August 18, it is provided

thus: "Provided that in civil cases filed before the passage of this act, parties desiring a jury shall not be required to pay the jury fee until the cause is called for trial."

III. A vendor's lien upon land is not established by proof that parties agreed that one of them should have a vendor's lien upon certain land. Such lien arises by operation of law where certain facts exist. If the facts do not exist, the vendor's lien does not arise. (Wynn v. Flannegan, 25 Tex., 778; Woolfolk v. Rickets, 41 Tex., 358; Wright v. Wooters, 46 Tex., 383; Spencer v. Geissman, 37 Cal., 96.)

IV. Where one advances money to relieve a homestead from the lien of unpaid purchase-money, and takes from the purchaser and his wife a note for the amount advanced and a deed of trust on the homestead to secure the payment of that note, he is not subrogated to the rights of the vendor, and the homestead is released from the lien of the purchase-money. And this is true, whatever may have been the intentions of the parties. (Malone v. Kaufman, 38 Tex., 454.)

V. Where parties know all the facts and there was no fraud, and they selected one particular security for payment of debts, believing that to be sufficient, but in law was not so, courts will not substitute another agreement for them because they made a mistake of law. (Story's Eq. Jur., sec. 115.)

*J. H. Jones* and *W. W. Morris*, for appellee.

MOORE, CHIEF JUSTICE.—It was no doubt the primary purpose in the enactment of our jury law to elevate the standard as respects both the moral and intellectual capacity of those to whom the delicate and important duties of a juror should be intrusted above what had been previously demanded. To secure this desirable result jury commissioners, appointed by the District Court, are authorized to select the requisite number of persons from the body of citizens from different portions of the county to act as jurors at each term of the court, who should be free from all legal exception, of good moral

character, of sound judgment, well informed, and, as far as practicable, able to read and write. It was also a leading object of the law to avoid the expense of keeping juries in constant attendance upon the court while business in which juries were not required was being transacted. The first of these objects is attempted to be attained by specific though somewhat complex rules regulating the selection of the jury from the body of the citizens of the county, while the latter is to be effected by simply placing all cases in which a jury is demanded on what is denominated in the statute a "jury case trial docket," and keeping a jury in attendance only while the court is occupied with this docket. With the exception of appearance cases, the causes on the "jury case trial docket" are to be tried or disposed of for the term, in their regular order, before those cases in which no jury has been demanded and a jury fee deposited. No civil case filed since the enactment of the law is to be tried by a jury, unless the party demanding it shall deposit the jury fee as therein prescribed, or make oath before the clerk that he has no money or property on which he can procure the money required to make such deposit, by 9 o'clock A. M. on the day of the court set by the judge for the trial of jury cases. But parties in cases filed before the passage of the law need not deposit the jury fee until the case is called for trial.

Evidently a demand for a jury must be made or notice given to put the case on the "jury case trial docket" before the time fixed by the court for its call. Otherwise this docket could not be made up so that the cases upon it could be tried in their regular order, or jury cases tried and disposed of for the term before the trial of cases in which a jury is not demanded. An inspection of the various provisions of the law unquestionably, in our opinion, leads to the conclusion that all parties who intend claiming a jury trial must take steps to have their cases placed upon the "jury case trial docket" by the time fixed by the court for its call, or certainly before it is finally disposed of and the jury dismissed

for the term.    Appellants' bill of exceptions not only shows that they failed to do this, but, further, that although the court before discharging the jury inquired of the members of the bar whether there would be any further necessity for a jury, their counsel made no response to this inquiry.    In view of these considerations, to hold that the court should have stopped its business and impanelled another jury for the trial of this case, or have continued it until the next term, that it might be then tried by a jury properly selected, would be in effect to say that the jury law is a failure and a farce.

The questions presented by the other assignments of error do not require serious notice.    It cannot be denied that there was evidence before the court tending to support its judgment.    It was in effect so held when the case was before this court on a former appeal.    (48 Tex., 241.)    We then thought, and still believe, all the questions raised had been previously ruled upon by this court in its former decisions.    And I may add that it was only by reason of this conviction that it had my assent; for, having long entertained the opinion that the entire equity doctrine of an implied lien for unpaid purchase-money for land is in violation of the statute of frauds as well as contrary to sound public policy, I could not have given my assent to the original doctrine as first announced by the court, much less the manifold extensions which from time to time it has received, had I not felt constrained to do so by the action of my predecessors, or by that of the majority of those with whom I was called to act.

When this case was before the court on a former appeal it turned mainly upon the ruling of the court below in excluding the testimony of the witness Webster Flanagan, which was, in effect, the same as in the present record.    The main objection, as I recollect, made to his testimony and discussed by counsel, was that it was immaterial, and if admitted was not, in connection with the other evidence in the case, sufficient to establish the lien.    The evidence having been excluded, there was not, as I remember, (and could hardly have

been, properly,) in the record, any evidence to impeach the witness or contradict his testimony. In the opinion reversing and remanding the case for the error of the court in excluding the proposed testimony, I, inadvertently perhaps, discussed the questions of law which we were called upon to decide as if the proposed evidence was an existing fact instead of a potential one.

Appellant's counsel insists that the judgment should be reversed because the opinion on this account might have unduly influenced the court below in finding in favor of appellee. But, admitting the mere literal and technical correctness of the criticism to which the opinion is thought to be subject, it cannot be admitted that there can be the least uncertainty in the mind of any one who reads it as to its legal effect, or doubt as to the precise point ruled in it by the court. If the case had been tried by a jury instead of the judge, it would unquestionably require a strain upon the imagination to suppose they could have been misled. But to insist that the learned district judge who presided on the trial of the case in the court below could believe that this court, because it had discussed the legal effect of a particular state of facts as if they had been proved, in determining that the court should not have excluded the evidence of the witness by whom it was proposed to prove them, had passed upon the credibility of the witness, or had given to his testimony controlling weight over other witnesses, is a proposition which could not have been made by one of the uniform frankness and candor of appellant's counsel, unless to some extent blinded and misled by the zeal of advocacy, and which, when calmly considered, we are confident, no one will repudiate more readily than the counsel by whom it is now urged.

The judgment is affirmed.

AFFIRMED.