JOSEPH NALLE v. CITY OF AUSTIN.

Decided January 24, 1906.

**1.—District Judge—Disqualification—Suit for Taxes.**

The district judge, though a taxpayer in a city, is not disqualified from trying a suit to recover city taxes, the interest required therefor being one in the cause to be decided, not merely in the question to be determined (Const., art. 5, sec. 11, Rev. Stats., art. 1068).

**2.—Jury Trial—Waiver.**

Though the waiver of right to a jury trial on the issues presented by the original petition, by failing to demand a jury at the time fixed by law, might not conclude one against whom new issues are raised by amendment, a jury should be at once demanded, if desired, upon the filing of such amendment, and one who has waited thereafter till a jury is no longer in attendance can not object to trial by the court.

**3.—Same—Query.**

Whether a party can claim prejudice from denial of a trial by jury where the case involving only the application of the law to admitted facts or documentary evidence, presents no controverted question for their decision, is questioned.

**4.—City Ordinance—Majority of Council—Mayor as a Member.**

A vote of the majority of the whole council of the city of Austin being required, by section 13 of its charter, for the adoption of an ordinance increasing the city revenues, the mayor being the presiding officer and entitled to vote only in case of a tie, and a vacancy caused by death existing in the board of aldermen leaving thirteen instead of fourteen provided for, a vote increasing the tax levy, passed by seven out of twelve aldermen present, the mayor not voting, was adopted by a majority of the whole council within the meaning of the charter.

**5.—Taxation—Board of Equalization—De Facto Officers.**

The city charter requiring the appointment of a board of equalization after each city election to serve two years, the acts of such board appointed and regularly performing their functions, in increasing the valuations of property, were those of *de facto* officers, and valid as such, though their appointment was not made till a year after the time fixed by the charter.

**6.—Usury—Taxes—Interest and Penalty.**

The usury laws of the State apply only to obligations arising out of contract, and do not invalidate ordinances imposing interest and penalties in excess of the legal rate upon defaulting taxpayers.

**7.—Taxes—Penalty—City Ordinance.**

An ordinance imposing penalties for nonpayment of taxes "hereafter levied" for certain enumerated years does not apply to taxes for those years which had, at the time of its passage, already been levied.

Appeal from the District Court of Travis County. Tried below before Hon. Geo. Calhoun.

The disqualification of Chief Justice H. C. Fisher to sit in this case having been certified to the Governor, Will G. Barber, Esq., was appointed and duly commissioned as special Chief Justice to sit with Associate Justice Eidson in its determination. Associate Justice Key did not participate.

*Gregory & Batts* and *G. S. Wright,* for appellant.—The court erred in holding that he was not disqualified to try said cause. Const., art. 5, sec. 11, as amended in 1891; City of Austin v. Nalle, 85 Texas, 534-535; Wetzel v. State, 5 Texas Civ. App., 17.

The right to a trial by jury can be lost only by agreement, or by a failure to comply with the statute after an opportunity to comply has been given. Const., art. 1, sec, 15; Rev. Stats., art. 3189; Allen v. Plummer, 71 Texas, 546; McFaddin v. Preston, 54 Texas, 406.

The mayor of the city of Austin was not authorized to cast any vote

for the passage of the purported ordinance of October 24, 1901. Special Laws of Texas, 1901, secs. 4, 5, 13, 31 and 78; Magenau v. City of Fremont, 9 Law Rep. Ann., 790; State v. Gray, 23 Neb., 365; Somers v. City of Bridgeport, 60 Conn., 521; State v. Chapman, 44 Conn., 595.

The whole council consisted of either fourteen aldermen and the mayor, or of the thirteen surviving aldermen and the mayor, and in any event the seven votes cast by the seven aldermen for the final passage of the ordinance did not constitute a majority of the members of the whole council, and, no condition having risen which entitled the mayor to a vote, the ordinance was never passed and never became effective.

No power existed in the city council to pass in the year 1903 a tax levy for the year 1901. Const., art. 11, secs. 4 and 5; Special Laws of 1901, p. 66, sec. 33; p. 70; sec. 42; p. 71, sec. 46; p. 74, sec. 56; pp. 89-91, secs. 114-132.

Said ordinance did not purport to impose interest and penalties except in cases of taxes levied after its passsage (March 17, 1902).

The three individuals who purported to act as a board of equalization and increased the values rendered by defendant for taxation did not constitute a legal board of equalization, and their acts were void, and defendant was therefore liable in any event only for taxes, interest and penalties based on his renditions for that year. Special Acts of the Legislature of 1899, page 9, sec. 39; Special Acts of the Legislature of 1901, page 68, sec. 39.

The court erred in rendering judgment against defendant for any interest or penalties because same was contrary to and violative of the usury law of the State of Texas.

*Allen & Hart,* for appellee.—The trial court was not disqualified from sitting in this cause, the pleadings in the case not raising any issue as to the validity of any tax levy for any year, except the year 1901. Galveston County v. Gorham, 49 Texas, 279; Galveston City Co. v. Galveston, 56 Texas, 494; Hardesty v. Flemming, 57 Texas, 400; Cage v. Neville, 3 Texas App. Civ. Cases (Willson), 333, sec. 274; Texas Land & Cattle Co. v. Hemphill County, 61 S. W. Rep., 333.

The pleadings in the case did not raise the issue as to the illegality of the penalty, and therefore the court was qualified to try the cause. Peacock v. The City of Dallas, 89 Texas, 438; City of Oak Cliff v. The State, 97 Texas, 391; State v. Fulmore, 71 S. W. Rep., 418; Galveston & W. Ry. Co. v. City of Galveston, 96 Texas, 520; League v. State, 56 S. W. Rep., 262.

The right of a trial by jury can be waived by failure to comply with the requisites of the statute. Cushman v. Flanagan, 50 Texas, 394; McFaddin v. Preston, 54 Texas, 406; Hunt v. Makemson, 56 Texas, 12; Petri v. First Nat. Bank, 83 Texas, 426; Barton v. American Nat. Bank, 8 Texas Civ. App., 226; Western U. Tel. Co. v. Thompson, 18 Texas Civ. App., 280; Denton Lumber Co. v. First Nat. Bank, 18 S. W. Rep., 962; Wood v. Kieschbaum, 31 S. W. Rep., 326.

The ordinance complained of, having received a majority vote of the whole council upon its final passage, was a valid ordinance. 1 Dillon on Municipal Corporations (4th ed.), secs. 273, 288, note 1, and cases cited; 20 Am. and Eng. Ency. Law, 12, 13, and note; Tiedeman on

Municipal Corporations, secs. 96 to 99; Launtz v. People, 113 Ill., 137; State v. Yates, 19 Mont., 239; Somers v. Bridgeport, 60 Conn., 521.

The parties who purported to act as members of the board of equalization were *de facto* officers, if not *de jure,* and, therefore, their acts were binding and could not be collaterally attacked.

BARBER, Chief Justice.—This suit was brought by appellee against appellant to recover city taxes claimed to be due from him to the city of Austin, for the years 1901, 1902, 1903 and 1904, together with certain interest and penalties alleged to have accrued by reason of the failure to pay same promptly when due. The case was tried upon the amended petition of the city, to which appellant filed, among others, the following special pleas, as condensed in his brief:

"First. That the city of Austin was operating under a special act charter providing that a majority of the members of the whole council should be necessary to pass any ordinance in any wise diminishing or increasing the city revenue; that the ordinance relied on by appellee as levying taxes for the year 1901 was never in fact passed, because it attempted to increase the tax for that year beyond that levied for the the year 1900, and a majority of the members of the whole council never voted for same, and that hence no valid levy of the tax for the year 1901 was ever made.

"Second. That the charter of appellee provided for a board of equalization, whose members should be appointed by the mayor and confirmed by the city council after each election in said city, and who should hold office for the term of two years from their appointment and qualification; that on November 6, 1899, a board of equalization was duly appointed, confirmed, qualified and entered upon its duties, and equalized the property values for the years 1899 and 1900, and that the duties and powers of the said board of equalization then ceased, but, notwithstanding this fact, the three individuals originally constituting said board proceeded to equalize the values for the year 1901, and made large additions to the values at which appellant rendered his property for taxation for that year, and that this was done without authority or power, and that appellant was liable, if at all, only for taxes upon said property on the basis of the values rendered by him.

"Third. That by the terms of the charter of the city of Austin, it was required that the mayor should appoint, and the city council should confirm, the board of equalization after each election in said city, and that said board should, within a reasonable time after each election, enter upon and perform its duties; that R. E. White was declared elected mayor on April 6, 1901, and qualified as such on April 15 of that year, the time provided by said charter, but that no board of equalization was nominated by the mayor until more than one year after his election and qualification, said board being first nominated by him and confirmed on July 21, 1902, and that the individuals composing the old board of equalization, which had been appointed and organized in the year 1899, purported to act as a board for the year 1901, and long after the new board should have been appointed and qualified, and attempted to increase the property values rendered by appellant for the year 1901, and that their said action was without authority and void, and that appellant

was liable, in any event, only for the taxes based on the values rendered by him.

"Fourth, That because of the failure to appoint and confirm a board of equalization for more than one year after the election and qualification of the mayor in the year 1901 the individuals so finally nominated by the mayor on July 21, 1902, never became a duly constituted board of equalization, and never had authority to act as such, and that, notwithstanding this fact, these individuals, claiming to have such authority, attempted to increase the values at which appellant rendered his property for the year 1902, and that said tax was illegal and unauthorized to the extent that it was based on said increased values.

"Fifth. That on April 11, 1903, said R. E. White was again elected mayor and qualified and entered upon his duties as such, and that he again failed to appoint a board of equalization for that year, and that the individuals claiming to have been organized into a board in the year 1902, attempted to perform their functions for the year 1903, and increased the values rendered by appellant, and that his taxes for the year 1903, insofar as based on increased values, were void.

"Sixth. That more than a year after his said second election said mayor nominated certain individuals as a board of equalization, and that they purported to act as such board, and increased the values rendered by appellant for the year 1904, and that they had no power to do so, and that the taxes claimed for that year, insofar as based on said increased values, were void.

"Seventh. That the penalties sought to be recovered for all of the years involved were claimed to have been incurred under the terms of an ordinance which was not published in the manner required by the charter of the city of Austin, in order to be effective.

"Eighth. That the penalties and interest were usurious."

Appellee, in its first supplemental petition, claimed that if the original ordinance levying a tax for the year 1901, was invalid, it was subsequently confirmed, validated and re-enacted by an ordinance dated August 3, 1903; to which defendant, by a first supplemental answer replied that the ordinance of August 3, 1903, was ineffective, because passed long after the current year, and financial year of 1901 had passed, and the council had no authority to pass it, and because the ordinance of 1901 being void could not be subsequently validated.

Appellant filed a motion alleging the disqualification of the district judge, and also asking that the cause be placed on the jury docket. This motion was overruled and the case was tried before the judge without a jury, and judgment rendered in favor of appellee for the sum of $14,145.68, taxes, interest and penalties, to which, as well as to the court's findings of fact and conclusions of law, appellant excepted and brings the case by appeal to this court.

The first and second assignments of error challenge the qualification of the district judge to hear and determine the case, because he was a taxpayer of the city of Austin for the years 1901, 1902, 1903 and 1904, and the validity of the ordinance levying taxes for those years is put in issue in this case, as well as the penalty asserted to accrue by reason of appellant's default in payment for these years. The record shows that the trial judge had paid voluntarily all taxes, except for the year

1904, and that as to that year he owed not only the taxes, but was also liable for the penalty, if same are enforceable.

The conditions as to the 1904 tax put the case most strongly for appellant, and the question will be, for convenience, considered as if that was the only year's tax in issue. Preliminarily it may be remarked that we are not inclined to agree with appellee in its contention that appellant's pleading does not sufficiently assail the tax and penalty for 1904.

In determining the question presented, it is to be borne in mind that Judge Calhoun had no discretion in the matter. If by Constitution or statute he was disqualified he could not try the case. If not, then he must do so. If interest merely in the question at issue disqualified, it would be readily conceded that disqualification here existed. But such is not the provision of the Constitution (Art. 5, sec. 11) nor of the statute (Rev. Stats., art. 1068) as to a district judge, although it is as to judges of the Supreme Court and this court. (Id., arts. 969, 1021.) Without speculating as to what reason, if any, there may be for this distinction we find the law so written, and the only injunction as to the trial judge is that he shall not sit "in any cause wherein he may be interested." Was Judge Calhoun interested in this cause of the city of Austin v. Joseph Nalle? We think not. Whatever his judgment might be, it could not affect, either directly or indirectly, any suit between him and the city involving the validity of the same ordinance. In any case involving the same question his conclusion or judgment in this would not be admissible in bar or by way of estoppel. No right of his is affected by the outcome here. Should appellee sue him to collect the same tax and penalty, the judgment he rendered in this case would establish neither issue of fact nor of law in that. The judge trying that would be influenced in no way by the decision in this case, except only as one lawyer may respect the opinion of another. If Nalle has judgment in this case the city may go on as before collecting the tax from every other taxpayer; and if the city wins here, every other taxpayer may resist the tax upon the same or other grounds. The conclusion reached is that the interest presented by the motion to disqualify was an interest only in the "question" and not in the "cause," which has long been held insufficient. (McFaddin v. Preston, 54 Texas, 403; Grigsby v. May, 84 Texas, 245; Myers v. Bloom, 50 S. W. Rep., 217; Sewerage Co. v. Wisdom, 354. The case of Nalle (85 Texas, 534) and Wetzel (5 Texas Civ. App., 17) relied upon by appellant are not inconsistent with the holding here. In the former, without further action on part of any court, officer or person the property of Judge Key would, by the injunction and judgment sought, have been relieved from a tax levied to pay bonds already issued and the issue of additional bonds prevented, thus giving to him direct benefit from the judgment. So in the Wetzel case, the judgment dissolving the corporation of Amarillo and enjoining all officers from collecting any taxes of any kind in and of itself, relieved the judge from liability to pay the tax, and he reaped the same benefit pecuniarily, as if he had been a party to the record. That there is no disposition to extend the doctrine announced in those cases is apparent from the opinions of the Supreme Court in the cases

of City v. Peacock, 89 Texas, 63, and City of Oak Cliff v. State, 97 Texas, 393, and we think the present case not ruled by them.

It is contended that appellant was without warrant of law deprived of a jury trial. There is much force in the suggestion of appellee's counsel that where, as here, the trial develops that there was really no contested issue of facts in the case, but only the application of the law to fact either admitted or established by uncontroverted documentary evidence, that any error in refusing a jury trial would be purely abstract and not cause for reversal, under the elementary rule of appellate procedure, refusing to reverse cases for errors wholly harmless. But if possibly mistaken in this view, it yet follows, we think, that the trial court had the discretion to refuse appellant's request for a jury. While appellant may with propriety urge that he could waive his right to a jury trial upon the issues made as to the 1901 tax, which alone was declared upon in the original petition, without thereby waiving same as to the tax for the other years first set up in the amended petition, yet we think it was his duty to at once demand the jury, if he desired it, upon the filing of the amendment. It appears that when the amendment was filed, counsel for appellee expressly notified appellant's counsel that a trial would be demanded during that term, and while the regular call of the jury docket had already occurred, there was yet two weeks jury docket, and for aught that appears, appellant could readily have had a jury trial by then demanding same. Having waited until after a jury was no longer in attendance upon the court, it was too late to insist, as a matter of right, upon a trial by jury. (Cushman v. Flanagan, 50 Texas, 394; Petri v. Bank, 83 Texas, 426; Id., 84 Texas, 153; Barton v. American Bank, 8 Texas Civ. App., 226; Denton Lumber Co. v. First National Bank, 18 S. W. Rep., 962.)

Grouping together his assignments from 6 to 13, appellant thereunder presents forcibly his contention upon which his counsel appear to chiefly rely for reversal.

It appears that the city of Austin acts under a special charter granted in 1901; that fourteen aldermen were regularly elected and qualified; that one died prior to the passage of the ordinance on October 24, 1901, levying the taxes for 1901; that another was absent from that meeting; that seven aldermen and the mayor voted for that ordinance, and five against it; and that it largely increased the tax levy over what it was for 1900. Section 13 of the charter provides that a majority of the members of the whole council shall be necessary to pass such an ordinance, and the contention is that such majority was not had in this instance. As pertinent to the question raised, the parties refer us to the following sections of the charter:

Section 4 provides that the city council shall consist of a mayor and board of aldermen; section 13, that a majority of the members of the whole council shall be necessary to pass an ordinance in anywise increasing or diminishing the city revenue; section 31, that in case of a tie vote by the council, the mayor shall have the casting vote, and section 78 provides that the mayor shall preside at all meetings of the city council, and shall have a casting vote when the council is equally divided and not otherwise.

From these charter provisions it is argued by appellant that the

mayor must be counted one of the council in determining when a
majority thereof has voted for a measure, but that he can not vote unless
there is an equal division between the aldermen. Applying this con-
tention to the case in hand, it is said that the council at time of passage
of the ordinance consisted of a mayor and either thirteen or fourteen
aldermen (according to whether the vacant place is or is not counted),
making either fourteen or fifteen men, so that in any event it took eight
to make a majority of the whole; that the vote of the aldermen present
being seven for and five against there was no tie; that accordingly the
mayor had no right to vote, and therefore, no majority of the whole
council properly voted for the ordinance. If we take literally certain
of the provisions of the charter and concede that the Legislature through-
out maintained or proposed to maintain with exact accuracy a distinc-
tion between the council (composed of the aldermen and the mayor) and
the board of aldermen (composed alone of the fourteen aldermen) then
one not unnaturally may reach the conclusion proposed by appellant.
But before doing this, and in seeking out the legislative intent, it is
well to notice some results to naturally follow. If the fourteen aldermen
are present, seven and the mayor favoring a proposition, and seven op-
posing it, it will carry; but by one of the opposition absenting himself,
the mayor is deprived of his power to act, yet he must still be counted
as one of the legislative body in determining whether a majority favored
the measure. The result is that the six remaining opponents to the
measure may defeat it, and the absent one has more legislative strength
than if present. And if the mayor is to be counted as one of the council
for all purposes, it will always be in the power of the opposition to any
measure to absent one of their member, thereby making an odd number,
and producing a condition wherein there can be no tie, so that the mayor,
instead of being a useful component part of the municipal legislative
body, becomes a handicap—he can not vote, because there is no tie—but
at the same time he must be counted in determining the number of
which those favorable to the measure must secure a majority before the
ordinance can pass. If we deal with the board of aldermen, as we think
we must, as composed of only thirteen aldermen at the time the ordi-
nance in question was passed, and say they and the mayor composed
the council, then the position of appellant results in this condition; al-
though eight of the thirteen persons (one alderman being absent) com-
posing the legislative body assembled on that occasion, favored a meas-
ure, yet they were powerless over the objection of the five, to pass it.
Those five alone then had more power than they would had the absent
and deceased aldermen have been both present and acting with them.
While such considerations are not controlling, if we find the Legislature
really intended that such conditions should or might exist, they may,
we think, be adverted to with propriety in reaching a conclusion as to
the proper construction to be given to the provisions of the charter.
Sections 31 and 78 thereof eliminate the mayor from ordinarily voting
upon measures proposed, and he may do so only when those primarily
charged with that duty are evenly balanced upon the issue. Those two
sections say the mayor shall vote when the "council" is equally divided,
thus seeming to deal with the council as a body of which he forms no
component part, and using the term where it can only mean the board

of aldermen. Taking the provisions altogether, we have reached the conclusion that the term "council" is used synonymously with the "board of aldermen" in section 13 wherein it is provided that a majority of the members of the whole council shall be necessary to pass an ordinance increasing or diminishing the revenue. The "whole council" referred to means the whole board of aldermen, as distinct from a quorum thereof. Substantially similar provisions were so construed in Mills v. Gleason, 11 Wis., 493. As said above, our view is that the legislative council then consisted of the thirteen aldermen, with the mayor authorized to exercise the ordinary functions of a presiding officer over a deliberative body. The death of one member reduced the board to thirteen, as we do not think that vacant position should be reckoned in determining what constitutes a majority of the board. Seven being a majority of the whole board or council, as then constituted, it follows that the ordinance levying the tax for 1901 received the necessary majority without the vote of the mayor. Having reached this conclusion, it is unnecessary to consider the question as to whether the mayor was or not authorized to vote. The cases cited by the respective counsel have been all considered. They bear upon the question as to whether the condition here existed authorizing the mayor to vote. The disposition we make of the contention of appellant renders their consideration in this opinion unnecessary.

The various assignments attacking the action of the different boards of equalization, may be disposed of with the proposition that the members of those respective boards were clearly *de facto,* if not *de jure* officers. It appears that those respective boards performed all the functions ordinarily incident to their positions; that no other persons than they were appointed to such positions or attempted to act in that capacity; that they discharged the duties incident to their positions without question from any source; that they were recognized as such by the properly constituted authorities of the city of Austin, and then appellant himself appeared before those boards and dealt with them as properly constituted boards of equalization. Under these conditions we think every consideration of public policy required that their acts be held valid, as between the public and any third person. As the assessments of property which form the basis to collect taxes in support of the State, county and municipal government, all pass under review of boards of equalization, every reason exists why such boards should be classed as *de facto* officers whenever proper occasion arises, rather than to have the public revenue jeopardized by collateral and subsequent inquiry into the regularity of the appointment of the individuals who have in fact acted and performed the duties of members of such boards without question.

Insofar as it is contended that to permit the recovery of six percent interest and five percent penalty upon the unpaid taxes, making a total of eleven percent, is in conflict with the Constitution and laws of the State against usury, it is enough to say that the subject of usury pertains alone to obligations growing out of contracts, and does not in any way hamper the Legislature in the exercise of its full power, in dealing with obligations, such as taxes, which do not rest upon any

contractual relations.    (Galveston Railroad Company v. City of Galveston, 96 Texas, 520.)

The only ordinance offered by appellee in support of its right to recover penalties upon the taxes due was passed March 17, 1902, and approved March 20, 1902.   It provides "that all taxes heretofore levied and now uncollected for the year 1898, shall be paid by April 1, 1899, or thereafter bear interest at the rate of six percent per annum, and all taxes hereafter levied for the year 1899 and subsequent years shall be paid by the first day of April of the year succeeding the levy, and if not so paid by the first day of April of the year succeeding, the levy shall thereafter bear interest at the rate of six percent per annum, and there shall be collected an additional sum of five percent upon the amount of such taxes as a penalty against the person, firm or corporation failing or refusing to pay such taxes within two months after same begin to bear interest."   At the date of the passage of this ordinance the annual tax for 1899-1900 and 1901, had already been levied.   Just why the ordinance should refer to the taxes for 1898 as already levied, and to those of the other three years just mentioned as if yet to be levied, we are at a loss to understand.   For those years the levies had already been made, as well as for the year 1898.   But the fact is that this, the only ordinance imposing the liability for penalties, makes such provision as to the taxes "to be *hereafter* levied for the year 1899 and subsequent years," and makes no character of provision for taxes then already levied, except as to the year 1898.   The care with which the distinction is made between taxes already levied as to the one year and those to be thereafter levied as to the other years, excludes the opportunity for assuming that this manner of provision as to 1899 and subsequent years is accidental, even if such assumption could, under less forbidding conditions, be invoked to support the recovery of penalties on the 1901 tax.

So standing the record, appellant by proper assignments complains of the trial court charging him with penalties on the taxes against his property assessed by virtue of the tax levy for 1901 made in October of that year, and we are of opinion that his contention must be sustained. If necessary to support this result, the rule demanding strict construction of statutes penal in their nature, might be invoked; but we think that even if the rule were the reverse, the conclusion would necessarily be the same.   In fact, it is one of those cases where the provisions of the statute are so plain that there is no room for construction, other than the application of plain, unambiguous and distinctly definite language. It will hardly be contended that appellant is liable for penalty, unless so made by some ordinance or statute, and if there is such, other than the ordinance we have discussed and held insufficient, it has not been noted by us, nor called to our attention.   In fact, it is to be observed that in the brief of appellee no attempt is made to answer appellant's assignments covering this criticism of the judgment, and we can only conclude that it has impressed its counsel, as it has the court.   We think the judgment should be reformed so as to relieve appellant from liability for the penalty upon the 1901 taxes, and it will be so ordered.

As to the interest, section 42 of the charter of itself creates the liability therefor, and no ordinance was necessary to make operative that

provision. We accordingly hold appellant's objection to his liability for interest not well taken.

In what is said above we have not overlooked the so-called validating ordinance passed August 3, 1903, pleaded and introduced in evidence by appellee. Having held that the original tax levy ordinance for 1901 was valid, there was, of course, no room for a second or a validating ordinance, and it can not be treated as having properly levied a tax for 1901 subsequent to the penalty ordinance of March 17, 1902, so as to come within the purview of the latter. We are, moreover, inclined strongly to the view presented by appellant that no power would exist in 1903 to levy a tax for 1901, even if the prior levy for that year was wholly invalid, but it is unnecessary to now so decide.

The judgment rendered was for a total of $14,145.68. In apportioning this amount so as to foreclose the lien against the separate parcels of property the judgment, as it appears in the transcript, places $3,131.89 against lot No. 10, and the east one-third of lot No. 11, in block No. 68 of the city of Austin, and adding together the several amounts when so apportioned and separated, we find a total largely in excess of the total amount of the judgment. Appellee, as well as appellant, says the item mentioned should have been $331.89, instead of $3,131.89, and appellee offers to remit accordingly. There is probably sufficient evidence before us to enable us to ascertain that the $331.89 is what the judgment was really rendered for; but as the offer to remit relieves the question of any embarrassment, the judgment will be further reformed in that respect.

As reformed, the judgment should be affirmed, and all costs of this court taxed against appellee.

*Reformed and Affirmed.*

Writ of error refused.