**RUTHERFORD v. WATSON.**

No. 12685.

Court of Civil Appeals of Texas. Fort Worth.

May 28, 1932.

Rehearing Denied July 9, 1932.

R. T. Wilkinson, Jr., of Mt. Vernon, and J. H. Beavers, of Longview, for appellant.

Oxford & McMillan, of Stephenville, for appellee.

DUNKLIN, J.

J. L. Rutherford, defendant in the court below, has appealed from an order of court granting a permanent writ of injunction restraining him and E. A. Lambert, sheriff of Hood county, a codefendant, from selling a tract of land consisting of 52¾ acres situated in Hood county, under a writ of execution which had been issued out of the district court of Hunt county.

The case was tried before the court without a jury, and following are the findings of fact and conclusions of law by the trial judge upon which the judgment complained of was based:

"Findings of Fact.

"1. Jarvis College was duly incorporated under the laws of the State of Texas on the 29th day of April, 1902, as a non-stock corporation, and for educational purposes, and the principal office and place of business was at Thorp Spring in Hood County, Texas.

"2. The Charter of Jarvis College was amended in 1905, changing the name of said College to Add-Rann Jarvis College.

"3. On the 8th day of June, 1911, by an amendment, the name of said corporation was again changed to Thorp Spring Christian College, and by such amendment the control of the institution was placed under a Board

known as Trustees. Said amendment provided, among other things, Art. 2:

" 'That this corporation is created for the following purposes, towit: The establishment and maintenance of a college for the advancement of education in which the arts, sciences, languages and Holy Scriptures shall be taught together with such other courses of instruction as shall be deemed advisable by the Board of Trustees, and which said College shall be managed and controlled as hereinafter set forth by a Board of Trustees, each of whom shall be a member of a congregation of the Church of Christ, which takes the New Testament as its only and sufficient rule of faith, worship and practice, and rejects in its worship and practice every thing not authorized by the New Testament, either by precept or example, and which does not introduce into its worship and practice as a part of same or as an adjunct thereto any supplemental organizations or practice not authorized by the New Testament, either by precept or example.'

"Art. 3:

" 'The location of this College and the business office of this corporation shall be in the County of Hood in or near the town of Thorp Spring, State of Texas.' * * *

"Art. 6:

" 'The board of trustees shall consist of thirteen members, a majority of whom shall constitute a quorum. Each trustee shall be, at the time of his election and during his entire term of office, a member of a congregation of the Church of Christ in good standing (said standing to be determined by the congregation of which he is a member) shall be a citizen of the State of Texas, providing that the moment any one of the above qualifications shall cease to exist with reference to any member of said Board, the office of such Trustee shall thereby become vacant.'

"Art. 7:

" 'The Board of Trustees shall hold office for life, except when a vacancy occurs by resignation or by reason of the existence of some disqualification referred in Art. 6 above and shall be self-perpetuating. When a vacancy occurs by death, resignation or disqualification the same shall be filled at once by a majority of the remaining members of the Board. The Board of Trustees shall have a presiding officer,' etc.

"Art. 10:

" ' * * * Should the Board of Trustees cease to exist by reason of any or all of the methods herein before described, towit: death, resignation or disqualification; or should the Board of Trustees fail to extend the term of the existence of this Corporation by filing a new charter at the proper time; or fail for ninety days to fill a vacancy in the Board; then, in any such event, the then acting Judges of the Supreme Court of the State of Texas, shall elect from among the members of the congregation of the Church of Christ as above defined, a full Board of Trustees. * * *'

"4. B. F. Woodhouse in 1927 in the District Court of Hunt County, Texas, recovered a judgment against Mrs. C. C. Perrin, W. E. Brawley, Thorp Spring Christian College and J. L. Rutherford; the said Rutherford being the defendant in this case, for the sum of $6,409.20, and which judgment contained the following provision: 'That if an endorser pays all or any part of said judgment, said payor to have judgment over against, the Thorp Spring Christian College for the sum so paid by him.' Thorp Spring Christian College had paid $4,000 on said indebtedness, and J. L. Rutherford, the defendant herein, paid the balance, towit, $2,764.18 on the first day of May, 1928.

"5. On the 13th day of November, 1927, in cause No. 7290, in the district court of Parker County, Texas, J. L. Rutherford recovered a judgment against Thorp Spring Christian College for the sum of $4,471.12.

"6. Said Hunt County judgment was duly abstracted in Hood, Hunt and Franklin Counties, Texas.

"7. A meeting of the Board of Trustees for said Institution was called, and due notice given to all members in good standing of a congregation of the Church of Christ in Texas, to be held at the College Auditorium in Thorp Spring, Hood County, Texas, for the purpose of making some satisfactory arrangements with reference to the indebtedness the college owed, and only four members of the Board of Trustees attended said meeting in person, towit: A. R. Holton, President of the College, Miss Jewell Watson, T. H. Dabney, and J. L. Rutherford, the defendant herein, and four other members of said Board sent in written proxies, and that said proxies attended and took part in the proceedings. There was some dissatisfaction among the people of Thorp Spring in regard to the theretofore Board of Trustees, and said citizens of Thorp Spring agreed to raise so much money to pay on the indebtedness, provided a new Board of Trustees for said Institution could be had, and in regard thereto the following agreement was entered into:

" 'B. F. Woodhouse, vs. Mrs. C. C. Perrin et al.

" 'In the District Court of Hunt County, Texas.

" 'Whereas in the above styled and numbered cause, the plaintiff, B. F. Woodhouse, did on the 13th day of June, A. D. 1927, recover a judgment against the defendants, Mrs. C. C. Perrin, Thorp Spring Christian College, a corporation, J. L. Rutherford, W. E. Brawley and Bob Chiles, for the sum of $6,409.20, of which amount the sum of $588.-

10 draws interest at the rate of six per cent. per annum from date, and the sum of $5,-881.10 draws interest at the rate of 8% per annum, until paid, which said judgment is duly recorded in vol. H–2 page 295 of the records of said court. To which record reference is here made for a full and complete description thereof, and in addition thereto, the said judgment provides that the defendants pay all costs of suit, and,

" 'Whereas, execution has been issued, and placed in the hands of the sheriff of Hunt County, Texas, and was by said sheriff returned into court with the notation in substance that nothing was found in Hunt County, Texas, belonging to said defendants subject to execution, and

" 'Whereas, execution was thereafter by the clerk of said court duly issued and directed to the sheriff of Hood County, Texas, and which said execution is now in the hands of the plaintiff, and

" 'Whereas, the said judgment has been duly abstracted in the various counties in which the various defendants reside, and has especially been duly abstracted and indexed in Franklin and Hood Counties, Texas, in the office of the County Clerk and the said abstract of judgment is recognized as creating a valid and subsisting judgment lien upon and against all of the real estate located in said Franklin and Hood Counties, Texas, in the name of J. L. Rutherford, and

" 'Whereas, the said judgment is in all things just, due and unpaid, except as hereinafter provided, and

" 'Whereas, the said defendant Thorp Spring Christian College, a corporation, has agreed and has paid to the plaintiff the sum of $4,000 in cash, and in consideration thereof, the said J. L. Rutherford has, and does hereby agree to assume the payment of the balance due on said judgment, and the said. J. L. Rutherford in consideration of the premises and the payment of the sum of $4,000 to the plaintiff, agrees to release the said defendant. Thorp Spring Christian College from the said judgment, and the said plaintiff, at the request of the said J. L. Rutherford shall release the said Thorp Spring Christian College from any and all liability under and by reason of the said judgment and the lien created by reason of the abstract of judgment filed in the office of the County Clerk of Hood County, Texas, in so far as it affects the property of said Thorp Spring Christian College, is hereby in all things released and discharged, and shall be of no further force and effect.

" 'Now, therefore, know all men by these presents:

" 'That this agreement is this day made and entered into by and between the said B. F. Woodhouse and J. L. Rutherford and said parties agree as follows: (1) The said Thorp Spring Christian College is hereby re-

leased from the payment of the balance of said judgment; (2) the said J. L. Rutherford assumes and agrees to pay the balance of said judgment including interest and court costs above the said sum of $4,000, which said amount has been paid thereon, and is recognized as a credit thereon. (3) The balance of said judgment, including interest and costs shall be paid to the plaintiff on or before the 1st day of May, A. D. 1928, and it is agreed that the said execution now in the hands of the plaintiff be returned to the district court of Hunt County, Texas, and that no other execution issue on said judgment, until after the 1st day of May, A. D. 1928, and that same shall not then issue, unless the said J. L. Rutherford shall have failed or refused to pay the balance due on said judgment. (4) In the event of the failure of said J. L. Rutherford to pay the balance due on said judgment on or before the said 1st day of May, 1928, then the said plaintiff herein, shall have the right to apply to the clerk of the district court of Hunt County, Texas, for an execution to issue in the said cause directed to the sheriff or any constable of Franklin County, Texas, or any other county, to levy upon any and all property subject to execution to be found in the name of the said J. L. Rutherford to satisfy the balance of the said judgment, and the cost etc. or the plaintiff may, at his own option, foreclose the judgment lien created by said abstract of judgment hereinbefore mentioned. (5) It is agreed and understood that the judgment liens created by virtue of the abstract of judgment in this cause of record in the records of Franklin County, Texas, in the office of the County Clerk, is hereby recognized and continued in full force and effect. (6) It is agreed that this agreement is not a novation of the said judgment in any way or manner, but that the same shall operate only to allow the said J. L. Rutherford an extension of time as to the payment of the balance of the said judgment and is made for the accommodation of the said Rutherford, and at his special instance and request. The said judgment is not in any way or manner impaired or modified in so far as the same applies to the said J. L. Rutherford; but the same is recognized as a valid and subsisting debt and judgment, and lien, except as to the payment of the said sum of $4000, which amount is recognized as a credit upon the said judgment.

" 'Witness our hands in triplicate originals, this the 21st day of January, A. D. 1928.

" 'B. F. Woodhouse
" 'J. L. Rutherford.'

"8. Said agreement was duly acknowledged by the said Woodhouse and the said Rutherford on the 21st day of January, 1928, and was recorded in the deed records of Hood County, Texas, on January 23rd, 1928. In

paragraph 6 of said agreement between Woodhouse and Rutherford and where the stars ( ) appear in said paragraph, the following words had been originally written therein 'has conveyed by deed to J. L. Rutherford a certain tract of real estate adjoining and forming 'a part of the college property known as the part consisting of approximately 60 acres of land in Hood County, Texas * * and the conveyance to him of said real estate,' but this part would not be agreed to by the citizens of Thorp Spring and the said Rutherford erased or scratched the same out.

"9. On the 3rd day of October, 1929, a pluris execution was issued out of the district court of Hunt County, Texas, in cause No. 15443, styled B. F. Woodhouse vs. C. C. Perrin, W. E. Brawley, J. E. Chiles, Thorp Spring Christian College and J. L. Rutherford; said execution was issued 'for the use and benefit of J. L. Rutherford and endorser, and was on the 4th day of October, 1929, at 2 o'clock P. M. levied by the sheriff of Hood County, Texas, on the 52¾ acres of land described in plaintiff's petition, as the property of Thorp Spring Christian College, and said sheriff had advertised said land for sale, at the court house door of Hood County, Texas, on the 5th day of November, 1929.

"10. On the 28th day of October, 1929, plaintiff Miss Jewell Watson presented her petition for injunction seeking to enjoin B. F. Woodhouse and E. A. Lambert, sheriff of Hood County, from selling said property upon the ground that she was the owner of the land, was not a party to the Hunt County judgment, and that the sale would constitute a cloud on her title, and that Thorp Spring Christian College had no interest in said land,' and that a temporary injunction was issued on said 28th day of October, 1929, enjoining the sale of said land, until the further order of the district court of Hood County, Texas, and J. L. Rutherford was granted permission to intervene in said injunction suit, and filed a petition of intervention, asserting that the land was the property of Thorp Spring Christian College at the time of the levy of execution and seeking to dissolve the temporary injunction theretofore issued.

"11. During the pendency of this suit, and in the year 1930, in the month of June, J. L. Rutherford caused to be levied upon the property in question of an execution issued from Parker County, Texas, the sale of the property, under such execution, against which a temporary injunction was granted restraining the said Rutherford and the Sheriff of Hood County, from selling the same until the further order of the district court of Hood County, Texas.

"12. At the meeting called by the Board of Trustees for said institution on the 2nd day of January, 1928, the four members present, said Trustees, and the four proxies, voted to elect a new Board of Trustees, the old board quit and refused to serve any further; and since said time, the new Board elected by said Trustees have been acting as Trustees and have been transacting all of the business for said institution. Thereafter the said new Board made application for an amendment of the charter which amendment was filed in the office of the Secretary of State on the 13th day of June, 1928, which amendment provided among other things that the location of the Thorp Spring Christian College and the business office of the same should be in the County of Johnson in the town of Cleburne, State of Texas, and would become effective September 1st, 1928. Said amendment was never carried into effect nor moved to Cleburne, Johnson County, Texas; but in the summer of 1928 the principal office and place of business was moved to Terrell in Kaufman County, Texas, by said Board of Trustees and was being conducted at said place; the business office being maintained at said place on the 25th day of September, 1928, and at that time a resolution was duly passed by said Board of Trustees authorizing the President Pink Payne to sell the land described in plaintiff's petition to A. C. Cox, said resolution is fully shown in the deed from Thorp Spring Christian College to A. C. Cox conveying the land described in plaintiff's petition to the said Cox.

"13. On the 11th day of October, 1928, A. C. Cox conveyed said land to the plaintiff herein for a consideration of $2,700.

"14. On the 17th day of October, 1928, an amendment to the charter was filed in the office of Secretary of State changing the location of Thorp Spring Christian College to Terrell, Kaufman County, Texas, said charter being endorsed 'Charter of Thorp Spring Christian College, Terrell, Texas.'

"15. By agreement the two injunction suits were consolidated and tried together; and by agreement Thorp Spring Christian College was the common source of title to the land described in plaintiff's petition.

"16. No suit has ever been instituted to oust or in any manner prevent the new acting trustees of Thorp Spring Christian College from acting as such trustees.

"Conclusions of Law.

"I conclude as a matter of law that on the date that Pink Payne, acting as President of Thorp Spring Christian College, a corporation, deeded and conveyed the land described in plaintiff's petition to A. C. Cox, that the then acting trustees were, if not de jure trustees of said college. de facto trustees of the same in law, and that the defendant's attack upon their actions in these suits is a collateral attack and cannot be maintained."

The statement of facts shows that $3,000 of the $4,000 cash consideration paid

to B. F. Woodhouse, plaintiff in the judgment rendered in his favor by the district court of Hunt county, was advanced and paid by the citizens of Thorp Springs in order to get the release of the Thorp Spring Christian College from that judgment. The evidence shows that the college was wholly unable to pay the sum so advanced by the citizens, who were in no sense liable on that judgment. That fact, together with the further agreement by Woodhouse, the holder of the judgment, to grant to Rutherford an extension of time from January 21, 1928, to May 1, 1928, in which to pay the balance due on the judgment, was a sufficient consideration to support Rutherford's agreement to release and relinquish his claim of right to subject the land in controversy to the payment of his judgment over against the college, in the event he should be required to pay to Woodhouse the judgment recovered by him against the college. Therefore we overrule the contention made by appellant that Rutherford's agreement to such release was without consideration to support it, and therefore was no bar to his defense to plaintiff's suit, based upon the text and authorities cited in support thereof in Texas Jurisprudence, vol. 1, p. 261, § 17, which, in our opinion, has no application here. See Merchants' Nat. Bank v. McNulty (Tex. Civ. App.) 31 S. W. 1091; 1 Texas Juris., p. 260, sec. 15, and p. 266, § 25; Vaughn v. Robbins, 254 Mass. 35, 149 N. E. 677, 41 A. L. R. 1488, and decisions cited in note to that case, beginning on page 1490. And since the payment of $3,000 to Woodhouse by the citizens of Thorp Springs and the extension of time granted by Woodhouse to Rutherford within which to pay the balance was conclusively established, there was no reversible error in the failure of the trial judge to make a specific finding upon the issue whether or not Rutherford's agreement to release the college from further liability on the Hunt county judgment was binding upon Rutherford. Although article 2208, Revised Civil Statutes of 1925, provides that the trial judge shall at the request of either party file findings of fact and conclusions of law, yet it is well settled by the decisions in this state that a failure to comply with the requirements of that statute is not reversible error if there is in the record a full statement of facts from which it appears that appellant has not been prejudiced by a failure to file such findings, and especially so if the judgment rendered is supported by uncontroverted proof. Umscheid v. Scholz, 84 Tex. 265, 16 S. W. 1065; Russell v. Lehman (Tex. Civ. App.) 300 S. W. 105; Childress v. Wolf (Tex. Civ. App.) 273 S. W. 275; Yost v. Wilson (Tex. Civ. App.) 27 S.W.(2d) 286.

It is insisted that the plaintiff failed to show title to the property in controversy, and therefore she was in no position to invoke the injunctive relief which was awarded. At the trial of the case it was agreed that the Thorp Spring Christian College was the common source of title. Plaintiff deraigned title as follows: (1) A deed from the Thorp Spring Christian College executed by Pink Payne, its president, of date October 11, 1928, reciting the passage of a resolution by the board of directors of the college authorizing Pink Payne as president of the corporation to sell and convey the property in controversy to A. C. Cox for a consideration of $2,700, and further reciting the payment of that consideration by Cox, together with a general warranty of title to the grantee, his heirs and assigns. (2) A warranty deed from A. C. Cox to the plaintiff reciting the payment of $2,700 by the cancellation of three promissory notes executed by the directors of the college payable to the plaintiff and $1,071.54 in cash. That deed bears date of October 11, 1928. Both of the deeds just mentioned were duly filed for record in the deed records of Hood county where the land was located.

Appellant's contention is that neither of those deeds was valid because of a lack of authority in the board of directors of Thorp Spring Christian College and Pink Payne, its president, to convey title which was vested in the college at the time of the execution of the deed to Cox, and, since that deed was void, the deed from Cox to plaintiff was likewise void.

It is insisted, in effect, that the charter of the Thorp Spring Christian College, named as grantor in the deed to Cox and by virtue of which that deed was executed, was a nullity, and therefore the title still remained in the college, notwithstanding the execution of that deed. The basis of that contention is that the provisions of the charter theretofore existing, filed June 8, 1911, expressly provided that the college should be managed and controlled by a board of trustees, consisting of thirteen members named in the charter, with the further provision that any vacancy in the board could be filled by the remaining members, and, in the event of a failure to so fill the vacancy, the same should be filled by the acting judges of the Supreme Court of Texas from the congregation of the Church of Christ. And it is argued that, since the evidence showed without controversy that there was no vacancy in the board of trustees who were acting under the charter of 1911 at the time the last charter was procured, which was October 17, 1928, the same being the charter under which the deed to Cox was executed, and the board of trustees named in the last charter was an entirely new board, there was no lawful authority in them for the procurement of that charter.

This being a collateral attack upon the last charter of the college, it cannot be sustained unless it be shown that the charter was void. It is not sufficient that it was voidable in a direct attack upon its validity in a suit instituted to dissolve it.

■ The following, quoted from 10 Texas Jurisprudence, p. 632, par. 40, is abundantly supported by the decisions of this state:

"A copy of the charter which has been filed with the Secretary of State having been obtained from that officer, a corporation has in fact been called into existence. This existence of the corporation in fact (de facto) is distinguishable from the right of the corporation to have a corporate existence, that is, an existence de jure. After the state has certified the charter, and so recognized the legal existence of the corporation, it would be contrary to public policy, and inconvenient as well, to allow a private individual to initiate an inquiry into the validity of an act of state in a proceeding to which the state is not a party. The writ of quo warranto was devised for this purpose, and is available to the state in a proper case.

"Accordingly, it is an established doctrine that a showing of de facto existence—as contradistinguished from pretended existence without colorable compliance with the law— is sufficient proof of the right to be treated as a corporation for purposes of the instant proceedings. In other words, a corporation which has, at least, a de facto existence, cannot be questioned collaterally."

In 7 Ruling Case Law, p. 60, par. 42, it is said: "A de jure corporation is one whose right to exercise a corporate function would prove invulnerable if assailed by the state in quo warranto proceedings. But an association may not be able to justify itself when called on by the state to show by what authority it assumes to be, and act as, a corporation. It may, however, be so far a corporation that, for reasons of public policy, no one but that state will be permitted to call in question the lawfulness of its organization. Such is what is termed a corporation de facto —that is, a corporation from the fact of its acting as such, though not in law or of right a corporation. It is an apparent corporate organization, asserted to be a corporation by its members, and actually acting as such, but lacking the creative fiat of the law. A corporation de facto is, in plain English, a corporation in fact—an organization with color of law and exercising corporate rights and franchise."

And on page 67, par. 48, this is said: "A corporation de facto may legally do and perform every act and thing which the same entity could do or perform were it a de jure corporation. As to all the world except the paramount authority under which it acts, and from which it receives its charter, it occupies the same position as though in all respects valid; and even as against the state, except in direct proceedings to arrest its usurpation of power, its acts are to be treated as efficacious. It is under the protection of the same law, and governed by the same legal princi-

ples, as a corporation de jure, so long as the state acquiesces in its existence and exercise of corporate functions. Thus a transfer of property to or by a corporation de facto will be held valid and binding against all persons except the state."

And again on page 434, par. 423: "A de facto officer of a private corporation may be defined as one in possession of and exercising the powers of the office under the claim and color of an election or appointment, though he is not an officer de jure and may be removed by proper proceedings. Or, considering the effects of his acts, an officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons. To constitute one a de facto officer he must hold office under some degree of notoriety or color of title, and the mere assumption of title to office on one occasion cannot clothe persons with the title of de facto officers."

See, also, Nalle v. City of Austin, 41 Tex. Civ. App. 423, 93 S. W. 141.

■■ It is undisputed that the deed to Cox was made in obedience to a resolution duly passed by the trustees acting under the charter of October 17, 1928, and, if the validity of that charter could not be successfully attacked by the defendant Rutherford, it would follow that the same must be said of the authority of the board of trustees and of Payne, the president, to execute the deed to Cox. Indeed, as said in 14a Corpus Juris, page 78: "The acts of de facto officers and directors are valid as to third persons. Similar rules are that a person acting publicly as an officer of a corporation is presumed to be rightly in office so far as the right of third persons are concerned, that is, title to office cannot be inquired into collaterally."

■ The recitation in the deed to Cox that the principal office of the college was in Terrell, Kaufman county, Tex., when its principal office was not in that city, did not invalidate the deed, since that erroneous recital could not have the legal effect of destroying the power of the corporation to perform any function authorized by its charter.

■ It is further insisted that the deed to Cox was ineffectual as a conveyance of title because it was acknowledged on October 11, 1928, six days before the charter of October 17, 1928, was filed with the secretary of state. The evidence showed that, after the election of the board of trustees under the charter of date October 17, 1928, at which some of the members of the old board participated, the old board ceased to further act, and the new board assumed authority to represent the college, and there is nothing in the record indicating any objection thereto by the old

board or any one else except defendant Rutherford who first challenged their authority in this suit. Under such circumstances, and since this attack upon the action of the new board in selling the land to Cox being collateral, this assignment is overruled upon the authorities above cited.

We are of the opinion further that the charter filed October 17, 1928, was in fact intended as an amendment of the charter of 1910, even though it did not specifically so recite, and the record discloses that it has been acted on as such by the trustees named in that charter since it was filed and also by the college for whose benefit the same was taken out.

For the reasons indicated, all assignments of error are overruled, and the judgment of the trial court is affirmed.