**John David JOHNSON, Appellant,**

v.

**THE CITY OF DUBLIN, Appellee.**

No. 11–00–00040–CV.

Court of Appeals of Texas, Eastland.

April 19, 2001.

Garry Lewellen, McMillan & Lewellen, Stephenville, for appellant.

Cobby A. Aaputo, Schwartz & Eichelbaum, Austin, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

WRIGHT, Justice.

The trial court granted the City of Dublin's plea to the jurisdiction on John David Johnson's Texas Whistleblower Act[1] claim and also granted the City's motions for summary judgment on Johnson's breach of contract and wrongful termination claims. We affirm in part and reverse and remand in part.

Johnson was employed as the chief of police by the City of Dublin for over 19 years. During part of that time, Johnson was also the city manager. The City attempted to terminate Johnson's employment as chief of police on October 13, 1997, pursuant to TEX. LOC. GOV'T CODE ANN. § 22.077(b) (Vernon 1999), which provides:

> If the governing body lacks confidence in a municipal officer elected by the governing body, the governing body may remove the officer at any time. The removal is effective only if two-thirds of the elected aldermen vote in favor of a resolution declaring the lack of confidence.

In this case, five members of the council voted that they had "no confidence" in Johnson, two members opposed that position, and one member abstained. The abstaining council member was Johnson's wife.[2]

---

1. TEX. GOV'T CODE ANN. § 554.001 et seq. (Vernon 1994 & Supp. 2001).

2. Since he had been employed with the City for more than 30 days prior to his wife's taking office on the city council, Johnson fell within the exception to the state laws on nepotism. TEX. GOV'T CODE ANN. § 573.062(a) (Vernon 1994). TEX. GOV'T CODE ANN. § 573.062(b) (Vernon 1994) prohibited Johnson's wife from participating "in any deliberation or voting on the...dismissal" of Johnson. The City argues that Johnson's interpretation of Section 22.077(b) would result in an effective violation of the nepotism

Johnson initially filed suit against the City stating claims under the Whistleblower Act as well as claims alleging that the City breached its employment contract with him. Johnson alleged that his termination resulted from his good faith reports of violations which he had observed certain persons commit while employed by the City. The trial court granted the City's plea to the jurisdiction on Johnson's Whistleblower Act claim, and it also granted the City's motion for summary judgment on Johnson's breach of contract claim. Johnson amended his petition to further allege wrongful termination. The City sought judgment on that claim also, and the trial court granted that motion.

In their arguments to the trial court, the parties asserted that, following the vote of "no confidence" at the city council meeting, Johnson's attorney asked if Johnson had the opportunity to speak at the meeting. Johnson complained that the mayor and two council members should not be allowed to vote.[3] Johnson alleged that he had notified law enforcement officers that there were certain bidding irregularities involving the City. He maintained that any vote by the mayor and those two council members would be retaliatory and that, therefore, they should not be able to vote. The mayor then read the resolution of the council to terminate Johnson's employment. Johnson's attorney asked once more if his client would have the opportunity to speak. An attorney associated with the City responded that Johnson's attorney was speaking out of order. A citizen of the City asked the mayor if the decision to terminate Johnson was based on the investigation of the City's attorney. The mayor said that it was not. Another citizen stated that he "couldn't understand why there was no reason given for firing David Johnson. The Council needs to give David Johnson a chance to talk because this is going to go into a legal battle." Before the meeting adjourned, one of the members of the council announced that he wanted to change his "no confidence" vote and vote against the resolution. He also stated that he was· resigning that night from the council, but the meeting was adjourned with no further action.

■ Johnson argues in his first point of error that the trial court erred in granting the City's plea to the jurisdiction in connection with the whistleblower claim. In its plea to the jurisdiction, the City alleged that Johnson had not complied with the City's written, employee grievance policies prior to filing his whistleblower claim. Therefore, it claims that the trial court did not have subject matter jurisdiction of this claim.[4]

---

laws because counting Johnson's wife's seat while not allowing her to vote is the same as allowing her to vote to preserve her husband's employment with the City. The City urges that the only interpretation which harmonizes the two statutes is to read Section 22.077(b) as requiring a two-thirds vote of the aldermen legally eligible to vote.

3. In our original opinion, the punctuation and the omission of the article "the" left the impression that this court thought that the mayor was someone other than the actual mayor; we did not.

4. If the rule heretofore was that a trial court must judge a plea to the jurisdiction solely on the allegations in a plaintiff's petition, it apparently is no longer. See *Hernandez v. Texas Workers' Compensation Insurance Fund*, 946 S.W.2d 904, 906 (Tex.App.—Eastland 1997, no writ). The Texas Supreme Court has recently addressed the procedures surrounding the treatment of pleas to the jurisdiction. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 555 (Tex.2000). In *Bland*, the court stated that "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised."

The City relies upon *Gregg County v. Farrar*, 933 S.W.2d 769 (Tex.App.—Austin 1996, writ den'd), to support its position that an employee who wishes to file suit against a governmental employer must "exhaust" the employer's grievance procedures before bringing suit in district court. The legislature amended TEX. GOV'T CODE ANN. § 554.006 (Vernon Supp. 2001) in 1995, and changed the word "exhaust" to "initiate." The amended section now provides:

(a) A public employee *must initiate* action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.

(b) The employee must invoke the applicable grievance or appeal procedures not *later* than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

(c) Time used by the employee in acting under the grievance or appeal procedures is excluded, except as provided by Subsection (d), from the period established by Section 554.005.

(d) If a final decision is not rendered before the 61st day after the date procedures are initiated under Subsection (a), the employee may elect to:

(1) exhaust the applicable procedures under Subsection (a), in which event the employee must sue not later than the 30th day after the date those procedures are exhausted to obtain relief under this chapter; or

(2) *terminate* procedures under Subsection (a), in which event the employee must sue within the time remaining under Section 554.005 to obtain relief under this chapter. (Emphasis added)

In this case, the first step in the City's grievance procedure requires that the employee enter into informal discussions with the employee's supervisor. If the informal discussions are unsuccessful, the City's formal grievance procedure is then initiated. That procedure requires that the employee prepare a written statement giving details of the grievance and stating the specific remedial action requested. The employee must present the written grievance to the immediate supervisor. If the employee does not obtain relief there, then the employee must file the written grievance with the department head. The final step requires that the employee submit a copy of the grievance to the city manager, who may present the grievance to the members of the city council.

Johnson argues that, since he was the chief of police, he was both the supervisor and department head of the department. Therefore, Johnson contends that the only other person to whom he could have presented his grievance was the city manager and that both the "acting" city manager and the city council knew that Johnson believed he was terminated because of the criminal investigation he had commenced. Assuming that his argument is correct, the grievance procedure provides that, at some point, Johnson was required to submit a copy of his *written grievance* to the city manager. The City's "policy on grievance" contemplates an employee submitting his grievance directly to the city manager by providing that, if an employee's immediate supervisor is also the department head, the employee may submit his written grievance directly to the city manager.

Johnson never did that.[5]

■ The court in *City of San Antonio v. Marin*, 19 S.W.3d 438, 441 (Tex.App.—San Antonio 2000, no pet'n h.), stated that changing the word "exhaust" to "initiate" in the Whistleblower statute appears "to be an attempt by the Legislature to clarify the language of sub-section (a) so that it more accurately reflects the true process of events under the statute as a whole." The pre–1995 statute did not require exhaustion if a final decision in the grievance procedure was not reached within 30 days. The statute still required an employee to initiate *each step* of the grievance procedure before suit could be filed under the Whistleblower Act. See *Gregg County v. Farrar*, supra at 776. The *Marin* court held that:

> Under the current version of the statute, the same result occurs, except for the fact that the employee must now wait 60 days for a final decision before filing suit. If 60 days has passed without a final decision, the employee may file suit without exhausting his administrative remedies or he may continue with the grievance procedure, just as an employee operating under the former version of the statute could.

While the term "exhaust" is no longer used in the amended statute:

> [A]n employee is required to *initiate* the grievance procedure and give the employer an opportunity to reach a final decision within 60 days. Only then, does the statute permit the filing of suit under the [Whistleblower] Act. (Emphasis added)

*City of San Antonio v. Marin*, supra at 441. The purpose of Section 554.006 is to afford the accused employer "the opportu-nity to correct its errors by resolving disputes before being subjected to the expense and effort of litigation." *City of San Antonio v. Marin*, supra at 441. Therefore, in *Marin*, the appellees violated both the spirit and the letter of the Whistleblower Act by filing suit two days after initiating the grievance procedure.

We hold that Johnson similarly failed to initiate action under the City's formal grievance procedure. Because he failed to satisfy the mandatory statutory prerequisites to filing suit under the Texas Whistleblower Act, the trial court lacked jurisdiction of Johnson's Whistleblower claim. See *Gregg County v. Farrar, supra*. The trial court properly granted the City's plea to the jurisdiction. Johnson's first point is overruled.

■ In his second point of error, Johnson argues that the "no confidence" vote of the City council was not in compliance with Section 22.077(b). Five of the eight elected aldermen voted "no confidence"; two voted against the proposition; and Johnson's wife abstained as she was required to do. Johnson argues that, because five is not two-thirds of the council, his termination was never properly in effect.

In its second motion for summary judgment, the City argued that, because Johnson's wife was statutorily barred from voting, her seat on the council could not be included in the computation of whether two-thirds of the council voted for lack of confidence. Therefore, the City argued that Johnson's termination complied with Section 22.077(b) and that his wrongful termination claim should be dismissed as a matter of law. The trial court granted the City's motion. On appeal, the City argues

---

5. On the date of Johnson's termination, the city manager had been terminated, and the mayor had been appointed "interim" city manager until another city manager could be hired. Although he argued the unconstitutionality of such arrangement in the trial court, Johnson does not present that argument on appeal.

that Johnson's interpretation of Section 22.077(b) would, in effect, allow his wife's vote to be a vote against the "no confidence" resolution. The City urges that such a position would nullify the provisions of the nepotism laws and that, as a matter of law, it is entitled to judgment that the vote was effective to terminate Johnson.

To be entitled to summary judgment, the party moving for summary judgment carries the burden of proving that no material fact issue exists and that the movant is entitled to judgment as a matter of law. *M.D. Anderson Hospital v. Willrich*, 28 S.W.3d 22 (2000); *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, the court takes the non-movant's evidence as true, indulges every reasonable inference in favor of the non-movant, and resolves any doubts in favor of the non-movant. *M.D. Anderson Hospital v. Willrich, supra*; *Nixon v. Mr. Property Management Company, Inc., supra.*

There is not an abundance of Texas law in this area, and we believe that a detailed discussion of the Texas cases which touch upon this question would be helpful. In *Missouri K. & T. Ry. Co. of Texas v. McGlamory*, 92 Tex. 150, 41 S.W. 466 (1897), the Texas Supreme Court construed Article 3, section 39 of the Texas Constitution. Article 3, section 39 provided, in part, as follows:

> No law passed by the Legislature, except the general appropriation act, shall take effect or go into force until ninety days after the adjournment of the session at which it was enacted, unless in case of an emergency, which emergency must be expressed in a preamble or in the body of the act, the Legislature shall by a vote of two-thirds of all the members *elected* to each House, other-

> wise direct; said vote to be taken by yeas and nays, and entered upon the journals. (Emphasis added)

The court noted that there were 128 "elected" members in the house. The bill passed with less than 86 votes which is not two-thirds of the "elected" members of the house. Therefore, the bill did not take effect until after the expiration of 90 days after the session finally adjourned.

In *Nalle v. City of Austin*, 41 Tex.Civ. App. 423, 93 S.W. 141 (1906, writ ref'd), the City of Austin sued Nalle to collect certain taxes. Among other things, Nalle argued that the charter of the City of Austin required that a majority of the members of the whole council must approve an ordinance which levies taxes. He took the position that a majority of the members of the whole council did not vote for the taxation ordinance in one of the years for which he had been sued. The charter for the City of Austin provided for 14 aldermen. At the time the vote was taken on the ordinance in question, one of the elected aldermen had died and another was absent from the meeting. Seven aldermen voted for the ordinance and five voted against it. Nalle argued that the whole council meant 14 aldermen and that 7 votes in favor of the ordinance was not a majority of the whole council. The court disagreed and held that the vacant position was not to be included in determining the number of aldermen making up the "whole council." It is important to note that the absent alderman was apparently included in the determination. Therefore, the "whole council" consisted of 13 aldermen. The requirement was not tied to "elected" council members.

In *State v. Etheridge*, 32 S.W.2d 828 (Tex. Comm'n App.1930, judgm't adopted), the court construed a statute which required a "two-thirds" vote of the members of the council in order to pass a certain

ordinance. The governing body of the City consisted of the mayor and five aldermen. Upon consideration of the ordinance, three of the aldermen voted in favor of the ordinance, one voted "no," and the remaining alderman did not vote. The court held that the ordinance had not passed because the vote required was two-thirds of a five member council. We note that *Etheridge* neither involved questions regarding death, resignation, or disqualification nor involved a requirement that the vote be by a certain fraction of the "elected" members of the body.

*City of Alamo Heights v. Gerety,* 264 S.W.2d 778 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.), involved an application for a zoning change. The city council for the City of Alamo Heights consisted of five aldermen. Gerety had requested a change of zoning, and the Planning and Zoning Commission for the city denied it. Gerety appealed to the city council. In order to obtain the change, it was necessary to obtain "the favorable vote of three-fourths of all the members of the legislative body of such municipality." *City of Alamo Heights v. Gerety,* supra at 778. At the time of the hearing, all five aldermen were in attendance. One of the aldermen disqualified himself "by reason of" interest. *City of Alamo Heights v. Gerety, supra* at 778. Of the remaining four aldermen, three voted in favor of the rezoning, and one voted against it. The mayor declared that the application to rezone failed since it did not obtain a favorable vote of three-fourths of the whole council. The trial court held that the application to rezone did obtain the required vote. On appeal, the court stated that "[t]he question before us is whether, in the face of the disqualification, the statute requires three-fourths of five or only three-fourths of four votes." The court answered that question by concluding that the disqualified alderman's position was not to be included in

the total and that three-fourths of four votes was the proper determination. The court went on to say:

> "[A]ll the members of the legislative body" means the same as "the members of the whole council"... and that it means all the members in esse and qualified to act.

*City of Alamo Heights v. Gerety, supra* at 780. The court also noted that a disqualification was to be treated the same as a vacancy when determining the number of members of the council. Again, "elected" council members was not a question in the case.

*Hannan v. City of Coppell,* 583 S.W.2d 817 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.), involved a rezoning ordinance. The city council of the City of Coppell is composed of a mayor and five aldermen. Prior to the time at which a zoning reclassification ordinance was voted upon, one of the aldermen declared that he was disqualified from voting on the ordinance. Furthermore, that same alderman was subsequently severely injured. The injury occurred prior to the date of the vote on the ordinance. The city council declared the alderman's seat to be vacant until such time as he was physically able to return. When the vote was finally taken upon the rezoning ordinance, three voted for it, and one voted against it. In order to be valid, the ordinance must have passed by the affirmative vote of "three-fourths of all members of the legislative body." An opponent of the ordinance claimed that the vote would require three-fourths of the five aldermen. Relying upon *Gerety,* the court disagreed and held that only three out of four votes were necessary to pass the ordinance. At the time of the vote, the "whole council" consisted of four aldermen. Again, the vote required was related to the "whole council," not the "elected" council.

The difference in the statute in the case now before us and those involved in the cases which we have discussed above (with the exception of *Missouri K. & T. Ry. Co. of Texas v. McGlamory, supra*) is that in this case, as in *McGlamory,* there is the specific requirement that the vote be a certain fraction of the *elected* members of the body.

In *City of Alamo Heights v. Gerety, supra* at 779, Justice Pope, writing for the court and citing *McGlamory* from Texas as well as many other states, stated that:

> Some statutes, in stating a necessary vote, contemplate an irreducible number of positions, a full and unreduced complement of the total body. That result is achieved in the case of a statute which refers not only to all the members, but also adds words to show it speaks of the total number of positions which always remains constant. This is illustrated by cases which have construed provisions requiring a specified fraction of a whole body "elected." *When the word "elected" is added, the cases have held that the total number of positions which constitutes that body is irreducible for any cause.* (Emphasis added)

The *Gerety* court also stated that, in cases where an irreducible number is contemplated, "even a vacancy does not reduce the total number included in the body." *City of Alamo Heights v. Gerety, supra.*

The *Gerety* court further stated that the cases which have discussed the issue of a disqualification "have treated disqualification as though it were a vacancy." Although we are dealing with the issue of a disqualification in this case, we are also interpreting a provision that clearly requires a vote of two-thirds of the *elected* aldermen. If disqualification is treated as a vacancy and if a vacancy does not reduce the total number to be included in cases such as those enumerated in *City of Alamo*

*Heights v. Gerety, supra,* then neither does disqualification reduce the total number to be included in such cases.

The City claims that including the place of Johnson's wife in calculating the required vote in effect allowed her to cast a vote against the proposition. The assertion is that such would be tantamount to a violation of Section 573.062(b) relating to nepotism. However, any other holding would be contrary to Section 22.077(b) which, we hold, requires that her position be included in determining the vote which is required under that section. Further, as the *Gerety* court stated, one "charged with the burden of obtaining a required number of affirmative or favorable votes does not discharge it by non-votes and negative votes of members composing the body." *City of Alamo Heights v. Gerety, supra* at 780.

Statutes which deal with the same general subject or which have the same general purpose are considered to be *in pari materia* and are to be construed as though they were one. *Texas State Board of Pharmacy v. Kittman,* 550 S.W.2d 104 (Tex.Civ.App.—Tyler 1977, no writ). The two statutes in the case before us neither deal with the same subject matter nor have the same general purpose. Section 22.077(b) specifically addresses the number of votes necessary to pass a "no confidence" measure. Section 573.062(b), on the other hand, mandates when a person is disqualified to vote. Neither statute is ambiguous. Our interpretation of the statutes does not create a conflict in the statutes but, rather, harmonizes and gives effect to the express terms of each statute. See *La Sara Grain Company v. First National Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984). Had Councilwoman Johnson simply been absent from the meeting, the result would be the same under our analysis of Section 22.077(b) be-

cause the required number of "elected" members is irreducible for any reason. Further, if we were to adopt Johnson's position and not count his wife's council seat in determining the required number of votes, we would violate the express terms of Section 22.077(b) by reducing the burden clearly required by that statute. Under the authorities cited, if it did not intend to include all elected council positions, the legislature would not have used the word "elected." It is generally presumed that every word in a statute is used for a purpose. *Jessen Associates, Inc. v. Bullock,* 531 S.W.2d 593, 600 (Tex.1975). The Texas Supreme Court stated in *Perkins v. State,* 367 S.W.2d 140, 146 (Tex. 1963), that:

> [I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible.

Furthermore, language such as that contained in Section 22.077(b) is to be strictly construed. *State v. Etheridge, supra* at 829. In *Etheridge,* the court, in discussing the appropriate application of strict construction, specifically referred to the forerunner of Section 22.077(b).

We hold that the word "elected" in Section 22.077(b) means that the required number is irreducible for any cause. Since the City Council of Dublin consisted of eight elected members, the "no confidence" resolution was not properly adopted by "two-thirds of the elected aldermen" when five voted for it, two against it, and the remaining member abstained from voting pursuant to Section 573.062(b). Johnson's second point is sustained.

Because the City did not show that it was entitled to judgment on Johnson's wrongful termination claim as a matter of law, the judgment of the trial court granting summary judgment on that claim is reversed and remanded for a trial on the merits. In all other respects, the judgment of the trial court is affirmed.