The UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, Appellant,

v.

Terry SAVOY, Appellee.

No. 09–01–496–CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 22, 2002.

Decided Aug. 29, 2002.

John Cornyn, Atty. Gen., Howard G. Baldwin, Jr., First Asst. Atty. Gen., Jeffrey S. Boyd, Deputy Atty. Gen. for Litigation, Toni Hunter, Chief, Gen. Litigation Division, Nancy K. Juren, Asst. Atty. Gen., Gen. Litigation Div., Austin, for appellant.

John S. Morgan, Snider & Morgan, LLP, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

Terry Savoy sued her employer, The University of Texas Medical Branch at Galveston, ("UTMB") for wrongful termination of her employment in violation of the telephone hotline anti-retaliation provision in the Texas Workers' Compensation Act. *See* TEX. LAB.CODE ANN. §§ 411.081–.083 (Vernon 1996).[1] The trial court de-

nied UTMB's plea to the jurisdiction, and UTMB appealed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2002). Savoy alternatively sued UTMB for violating the Texas Whistleblowers' Act. *See* TEX. GOV'T CODE ANN. § 554.001–.010 (Vernon 1994 & Supp.2002). The trial court granted UTMB's plea to the jurisdiction on the alternatively pleaded whistleblower claim, and Savoy appealed.

■ The first issue to be resolved in this appeal is whether the Legislature waived sovereign immunity under Labor Code § 411.083 for a cause of action against the University of Texas System. We cannot hold that a governmental entity's sovereign immunity has been waived unless we find clear and unambiguous statutory language in which the Legislature has waived that immunity. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995). The extent to which the Legislature adopted the Texas Workers' Compensation Act for employees of the University of Texas System is set forth in Section 503.002 of the Texas Labor Code, as follows:

§ 503.002. Application of General Workers' Compensation Laws; Limit on Actions and Damages

(a) The following provisions of Subtitle A apply to and are included in this chapter except to the extent that they are inconsistent with this chapter:

(1) Chapter 401, other than Section 401.012 defining "employee";

(2) Chapter 402;

(3) Chapter 403, other than Sections 403.001–403.005;

(4) Chapter 405;

---

1. Although originally named as a defendant, the Texas Department of Criminal Justice was dismissed from the suit. Also not at issue in the appeal are the claims filed by another plaintiff, Holly Rice. Rice's suit was severed and transferred to Galveston County.

(5) Sections 406.031–406.033; Subchapter D, Chapter 406; Sections 406.092 and 406.093;

(6) Chapter 408, other than Sections 408.001(b) and (c);

(7) Chapters 409 and 410;

(8) Subchapters A and G, Chapter 411, other than Sections 411.003 and 411.004; and

(9) Chapters 412–417.

(b) For the purpose of applying the provisions listed by Subsection (a) to this chapter, "employer" means "the institution."

(c) Neither this chapter nor Subtitle A authorizes a cause of action or damages against the system or any institution or employee of the system or institution beyond the actions and damages authorized by Chapter 101, Civil Practice and Remedies Code.

TEX. LAB.CODE ANN. § 503.002 (Vernon 1996).

■ Savoy argues, Labor Code "§ 503.002(a)(8) expressly incorporates Chapter 411, with the only exception being §§ 411.003–4." She is wrong. Labor Code § 503.002(a)(8) incorporated two of the four sections contained in Chapter 411, Subchapter A, and the two sections contained in Chapter 411, Subchapter G, but did not include any part of Chapter 411, Subchapters B, C, D, E, F, or H. Important here is that Labor Code § 411.083 (Judicial Relief for Employer Retaliation) is contained in one of the excluded subchapters, Subchapter F (Employee Reports of Safety Violations) of Chapter 411 (Workers' Health and Safety) a part of the Texas Workers' Compensation Act. Therefore, the statute that adopted the Workers' Compensation Act for employees of the University of Texas System did not incorporate Section 411.083.[2]

Savoy argues that *Kerrville State Hospital v. Fernandez*, 28 S.W.3d 1 (Tex. 2000), supports a conclusion that the Legislature intended to permit suits such as Savoy's. We disagree. In *Kerrville*, a case involving the State Applications Act, the Supreme Court held that the legislative intent to waive sovereign immunity was expressed in Section 15(b) which states, "[The Anti–Retaliation Law] is adopted except to the extent it is inconsistent with this article. For purposes of that Act, the individual agency shall be considered the employer." *Id* at 4–7. In *Kerrville*, the issue was whether the Legislature had intended to waive sovereign immunity on a cause of action created by a section of the Workers' Compensation Act that it had adopted for purpose of providing workers' compensation coverage for the employees of certain state agencies. *Id*. By contrast, the issue here is whether the Legislature intended to waive sovereign immunity on a cause of action created in a section of the Workers' Compensation Act, i.e., Section 411.083, that it did **not** adopt in the statute that provided workers' compensation coverage for employees of the University of Texas System.

We hold that the trial court lacked jurisdiction over the claim that Terry Savoy

---

**2.** The source law to Labor Code § 503.002 states:

The following provisions of the Texas Workers' Compensation Act ... are adopted and shall govern except to the extent that they are inconsistent with this Act:
. . . .
(5) Articles 5 through 10, except Sections 7.02 though 7.09.

Act of Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, sec. 15.39, 1989 Tex. Gen. Laws 109. The telephone hotline anti-retaliation statute is contained in Sections 7.08 through 7.09. Act of Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, §§ 7.08–.09, 1989 Tex. Gen. Laws 66–67.

brought against The University of Texas Medical Branch at Galveston, for violation of Labor Code § 411.083. UTMB's issue is sustained.

■ Savoy's three issues challenge the granting of the plea to the jurisdiction on her whistleblower claim.[3] The Whistleblowers' Act requires invocation of the appeal procedure by the public employee bringing the claim. TEX. GOV'T CODE ANN. § 554.006 (Vernon Supp.2002). If a final decision is not rendered before the 61st day after the date the employee initiated the appeal, the employee may elect to exhaust the applicable procedures, or terminate the procedures and file suit. Id. The trial court found that Savoy abandoned the appeals process before 60 days had elapsed.

On August 1, 2000, Lynn McFaddin, the Nurse Manager at the Stiles Unit, notified Savoy in writing that Savoy's employment with UTMB would be terminated effective that day. Savoy initiated the appellate process by giving notice to her supervisor, Lynn McFaddin, on August 3, 2000. Her Level 1 appeal was decided by Eddy Chastain, the Regional Director of Nurses, on August 17, 2000. Savoy initiated her Level 2 appeal by giving a notice letter to Barrett Brown,[4] the personnel manager, on August 23, 2000. Elaine H. Mysliwiec, the Facility Nursing Services Director, denied the appeal on September 5, 2000. Notice of that decision was mailed to Savoy by certified mail. Savoy's affidavit stated, "On September 5, 2000, the director of the facility of nursing services, Elaine Mysliwiec, rejected my appeal and upheld the termination at the Level II appeal. I received this Level II appeal on or about September 9 of 2000." Savoy did not initiate a Level 3 appeal. UTMB's written policy stated, as follows:

> If the individual is not satisfied with the decision of the level two official, a written response stating why the decision is unacceptable must be submitted to the level two official by the individual within *five (5) working days* of receipt of the level two decision. This written response requests that the appeal and attachments be forwarded within *two (2) working days* to the level three official, the Chief Administrative Officer for Managed Care. [emphasis in original]

Savoy's brief states, **"Then, Appellant wrote a third letter to Lynn McFaddin, which Ms. Savoy considered as a level three appeal, because she wrote it after the denial of her level two appeal."** [emphasis in original] This assertion is not supported by the record. The only correspondence from Savoy to McFaddin that we have been able to locate in the record is the August 3 letter that initiated Savoy's Level 1 appeal. McFaddin testified that she had no further communication with Savoy. During the hearing, Savoy testified, "I thought that that was the letter to

---

3. Issue one: The trial court erred in dismissing Appellant's claim under the Texas Whistleblowers Act, TEX. GOV'T CODE § 554.001 *et seq.*, because Appellant filed suit seventy-one (71) days after initiating the appeal process, and Texas law permits her to file suit sixty-one (61) days after initiating the appeal process.

Issue two: The trial court erred in dismissing Appellant's claim under the Texas Whistleblowers Act, TEX. GOV'T CODE § 554.001 *et seq.*, because the UTMB had made a final decision adverse to Appellant that provided Appellant with a right to file suit.

Issue three: The trial court erred in dismissing Appellant's claim under the Texas Whistleblowers Act, TEX. GOV'T CODE § 554.001 *et seq.*, because the trial court has jurisdiction over this claim.

4. The policy required the employee to submit the written response to the Level 1 official, who in this case was Eddie Chastain, but UTMB acted on the Level 2 appeal that Savoy initiated with Brown.

Lynn McFaddin that was Level I. That was the supervisor immediately over me that terminated me. So, I appealed to her with documentation. She said in her response to me she was passing it. Then I got the letter from Eddie Chastain who said he denied the grievance."

Savoy's affidavit stated that she tried to initiate a Level III appeal by talking to Barrett Brown, and by calling several people in Galveston, who told her that she could not pursue any further appeals or any grievances. She told the people in Galveston that "the law gave me the right to another level of appeal." At the hearing, Savoy testified that she left messages with Brown's office and with Galveston, but she never received any response. Savoy called Dr. Murray, the Acting Director of Nursing for the UTMB Southern Region, but he did not return her calls.

During the hearing, however, Savoy admitted that no one told her that she could not write a letter to Mysliwiec stating why her decision was unacceptable. The only people she spoke to in 2000 regarding her termination were secretaries. Savoy admitted that Chastain told her not to call Dr. Murray only in connection with her disciplinary action the previous year, and that no one told her she could not write to Dr. Murray or appeal to the third level.

The record supports the judge's findings: 1) that Savoy, who had successfully appealed a termination the previous year, was experienced with the procedural aspects of the grievance and appeal procedures; and 2) that Savoy failed to remain in the appeal process for the full sixty days, but instead abandoned the process at the second level before sixty days had expired.

■ Government Code Section 554.006 requires an employee to initiate *each step* of the grievance procedure before suit may be filed under the Whistleblower Act. *See Johnson v. The City of Dublin,* 46 S.W.3d 401, 405 (Tex.App.-Eastland 2001, pet. denied); *City of San Antonio v. Marin,* 19 S.W.3d 438, 440 n. 2 (Tex.App.-San Antonio 2000, no pet.).

Savoy relies upon cases that are distinguishable, such as *University of Texas Medical Branch at Galveston v. Hohman,* 6 S.W.3d 767, (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.). The issue in *Hohman* was whether the plaintiffs timely initiated the administrative grievance procedure, where it was unclear whether the established grievance procedure would apply to individuals no longer employed by the defendant. The court held that a letter from the plaintiffs' counsel was sufficient to put the defendant on notice that the nurses were seeking some sort of administrative remedy. *Id.* at 774–75. In *City of San Antonio v. Marin,* the city employees filed suit only two days after initiating arbitration. The *Marin* Court held that Section 554.006 "clearly prohibits suit from being filed anytime within 60 days of the date the grievance procedure is initiated." 19 S.W.3d at 441. That whistleblower suit was dismissed for lack of jurisdiction.

Another appeal, *Fort Bend I.S.D. v. Rivera,* No. 14-01-00721-CV, 2002 WL 576031, *4 (Tex.App.-Houston [14th Dist.] Apr. 18, 2002, no pet. h.), also held that where an entity's policy is unclear, the terminated employee's claim will not be barred by the statutory requisites of the Whistleblowers' Act. In *Rivera,* the policy required a meeting, but the official in question refused to meet with the employee. *Id.* at *3.

Savoy argues that her repeated phone calls to secretaries in Galveston satisfied the policy's notice requirement because "it was unclear to Ms. Savoy what additional steps she could take to appeal." In order to initiate the Level 3 appeal, UTMB's policy simply and clearly required Savoy to provide written notice to the person who

decided the Level 2 appeal. On September 5, 2000, the Director of Facility Nursing Services notified Savoy in writing, as follows: "I am in receipt of the Level II appeal of your termination. I have reviewed the information and concur with the decision to deny your appeal." Although Savoy received the notice on September 9, she did not provide a written response to Mysliwiec or any other UTMB official.

Savoy's effective termination date was August 1. Savoy initiated the appeal process on August 3. The Whistleblowers' Act required her to remain in the appeal process for 60 days. *Johnson v. The City of Dublin,* 46 S.W.3d at 405; *City of San Antonio v. Marin,* 19 S.W.3d at 441. The Level 2 appeal was resolved in less than 60 days. Savoy did not initiate a Level 3 appeal by submitting a written response, stating why the decision was unacceptable, within five working days of her receipt of the Level 2 decision. Accordingly, Savoy did not satisfy the mandatory statutory prerequisites to filing suit under the Whistleblowers' Act. The trial court properly granted UTMB's plea to the jurisdiction. Savoy's cross-points are overruled.

We hold that the trial court lacked jurisdiction to hear the cause. The trial court's order granting The University of Texas Medical Branch at Galveston's plea to the jurisdiction on Terry Savoy's whistleblower claim is affirmed. The trial court's order denying The University of Texas Medical Branch at Galveston's plea to the jurisdiction regarding sovereign immunity on Terry Savoy's telephone hotline retaliation claim is reversed. We dismiss the entire cause for lack of jurisdiction.

CAUSE DISMISSED.

DON BURGESS, Justice, dissenting.

I respectfully dissent to issue one. The trial judge, in his letter to all counsel, stated:

It is this Court's considered opinion that the legislature would not intentionally waive sovereign immunity for whistle blowers but refuse to do so for retaliatory discharge or, as is the issue in this case, retaliation for utilization of the hotline. [FN2 The practical effect of this would be to grant UTMB carte blanche to retaliate for anything other than whistle blowers. If that were the case, the chilling effect on UTMB employees' pursuit of workers' compensation claims (or use of the hotline) could well serve to deprive them of a long recognized right in this state.] Given this Court's doubt as to the legislature's intention, I believe the better practice would be to deny defendant's Plea to the Jurisdiction at this time . . . .

The trial judge considered the *juxta* position of similar statutes and made a ruling based upon those considerations. I concur with the trial judge's analysis and therefore would overrule issue one.