In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-137 CV


____________________



MONTGOMERY COUNTY HOSPITAL DISTRICT, Appellant



V.



TONYA SMITH, Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 04-02-01236-CV






 OPINION 


 The trial court denied a plea to the jurisdiction filed by the Montgomery County
Hospital District (hereafter "MCHD"). The MCHD appeals the trial court's denial. We
reverse and render.

 In this suit, Tonya Smith, formerly employed by the MCHD, alleges the hospital
terminated her in violation of Section 554.002(a) of the Whistleblower Act. Tex. Gov't
Code Ann. §§ 554.001-.010 (Vernon 2004). Smith contends that her termination occurred
as a consequence of her report to one of MCHD's board members that James Hamilton,
MCHD's CEO, entered into a contract to sell a building owned by the MCHD. Smith alleges
that her report of the MCHD's entering into this contract resulted in a change in attitude
toward her by Hamilton, and led to a concerted effort in which he sought to find "any item
to criticize" her. 

 Several months later, Smith claims that Hamilton reassigned her from her duties as
a liaison between the MCHD's board and its employees to duties in a storage warehouse. 
On November 20, 2003, seven days after being reassigned to the warehouse, Smith asserts
that Hamilton fired her under the pretext that "[it's] just not working out." The MCHD
denied Smith's claims, and asserted that Smith's termination was based on her poor job
performance and conduct unrelated to her retaliation claim. 

 Following her termination, the MCHD offered Smith a severance package. The
MCHD offered to continue to pay Smith through the end of December, 2003 or for
approximately six weeks following her termination, in exchange for a release of her claims. 
Ultimately, Smith rejected the MCHD's severance offer. 

 On December 1, 2003, Smith alleges that she requested Hamilton, MCHD's CEO, to
"reconsider his decision." On that date, Smith e-mailed a request to Hamilton. Smith's 
request is central to the resolution of the issues on appeal. Her e-mail to Hamilton states:


From: Tonya Smith [e-mail address deleted]

Sent: Monday, December 01, 2003 9:49 AM

To: Hamilton, James

Subject: Release of Claims

Importance: High

Mr. Hamilton,


I hope that you had a good holiday with your family. I have
spoken to Stacy regarding the release of claims document. She
told me that you were standing by the number of 4,200 for my
release. I am sincerely asking you to please reconsider. I know
that you have a good heart and that is why I am even asking
again. It would help my family out tremendously with the
upcoming holidays and such to have the extra monies to keep us
afloat for a little while. Again, I am sincerely asking to please,
please reconsider. When I spoke to Greg he said that you were
able to, but had to make the decision. I enjoyed working with
you and the organization and am truly sorry for the way things
worked out.

Please let me know so I may come to the District to finalize
ever[y]thing.

Sincerely,

Tonya 

The parties disagree on the meaning of Smith's December 1, 2003 e-mail to Hamilton. 
Smith contends her e-mail constituted an appeal of Hamilton's decision to terminate her
employment. On the contrary, the MCHD contends the e-mail was not an appeal of Smith's
termination and points to Smith's deposition testimony where Smith testified she did not
intend her December 1, 2003 e-mail to constitute an appeal of her termination. 

Alternatively, if the December 1, 2003 e-mail is not sufficient to constitute an appeal
of Smith's termination, Smith invites us to create a judicial exception to Section 554.006 of
the Texas Government Code, wherein the Legislature requires that a public employee invoke
the applicable grievance or appeal procedure before filing a suit. Smith argues that appealing
her termination through the MCHD appeal procedures would have been futile since Hamilton
was her direct supervisor and the MCHD's CEO. In response, the MCHD asserts that futility
is not a recognized exception to the administrative appeal requirements established by the
Legislature. 

Finally, Smith asserts that complying with the grievance or appeal procedures of a
governmental entity is procedural, and not jurisdictional. As a result, Smith contends that
the remedy for any failure on her part to comply with the MCHD's appeal procedures is to 
abate her claims to allow them to go through the MCHD's grievance procedures. The
MCHD, on the other hand, asserts that Smith's compliance with its appeal process is
jurisdictional. As a result, the MCHD argues that we are required by law to dismiss Smith's
suit because it remains immune from her Whistleblower claims when its appeal process is
not invoked as required by the Act. 

To resolve this appeal, we must consider two issues. Did Smith initiate the MCHD's
disciplinary appeal process? If she did not initiate the appeal process, is her failure to do so
a jurisdictional or procedural defect in her claim? We hold that Smith did not initiate the
appeal process. We further hold that Smith's failure to initiate an appeal under the MCHD's
appeal procedures is a jurisdictional defect that deprives the trial court of jurisdiction over
her suit. As a result, we dismiss Smith's claims against the MCHD.

STANDARD OF REVIEW

The Montgomery County Hospital District was created under the authority of the
Texas Constitution and statute, Act of May 12, 1977, 65th Leg., R.S., ch. 258, 1977 Tex.
Gen. Laws 678-687. See Tex. Const. art. IX, § 9; Tex. Health & Safety Code Ann. ch. 
286 (Vernon 2001 & Supp. 2005). No party contends that the MCHD is not either a state or
local governmental entity with respect to Chapter 554 of the Texas Government Code, and
Smith specifically alleged that the MCHD "is a political subdivision of the State of Texas."

A governmental unit, as statutorily defined, may file an interlocutory appeal from a
denial of its plea to the jurisdiction. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8)
(Vernon Supp. 2005); § 101.001 (Vernon 2005). The definition of "governmental unit" in
Section 101.001 does not specifically include hospital districts, but the statutory definition
of governmental unit is nevertheless broad, and includes any "institution, agency, or organ
of government the status and authority of which are derived from the Constitution of Texas
or laws passed by the legislature . . . ." See Tex. Civ. Prac. & Rem. Code Ann. §
101.001(3)(D) (Vernon 2005). Moreover, no party contends that the MCHD does not have
the right to an interlocutory appeal, or that the MCHD does not qualify as a governmental
unit under the broad definition contained in section 101.001 of the Civil Practice and
Remedies Code. Thus, we have jurisdiction over this appeal. 

A party, by asserting a plea to the jurisdiction, contests the trial court's authority over
the subject matter of the dispute. Texas Dep't of Transp. v. Jones, 8 S.W.3d 636, 639 (Tex.
1999). We review the district court's ruling on a plea to jurisdiction under a de novo
standard. State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322,
327 (Tex. 2002). In evaluating MCHD's plea to the jurisdiction, it is appropriate to consider
relevant evidence when necessary to resolve the plea. Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 555 (Tex. 2000). "[I]f the relevant evidence is undisputed or fails to raise a fact
question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a
matter of law." Tex. Dep't of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex.
2004). 

In this case, the only evidence proffered by Smith that she argues constituted her
attempt to comply with MCHD's disciplinary appeal procedures is her e-mail dated
December 1, 2003. The MCHD's receipt of the e-mail, and its content, are not disputed. 
Also, the MCHD submitted a copy of its policies and procedures manual to the trial court,
and there is no evidence that these were not the policies and procedures relevant to Smith's
termination. Thus, we review the trial court's decision regarding whether Smith's e-mail
initiated the MCHD's appeal process de novo. 

GRIEVANCE AND APPEAL PROCEDURES

The evidence is undisputed that the MCHD gave Smith a copy of its policy and
procedure manual when she worked for the district. MCHD's policy #10-413 described
MCHD's disciplinary appeal process, in pertinent part, as follows:

DISCIPLINARY APPEAL PROCESS

A staff member wishing to appeal a disciplinary action shall
notify in writing the Chief Administrative Officer within five (5)
days of the disciplinary action.

The Chief Administrative Officer may elect to take the
following action:

1. Review the request and deny the appeal

2. Review the request and remand the decision to the
Department Manager for consideration

3. Grant the request a formal review


Action Available to the Chief Administrative Officer:


Should the Chief Administrative Officer grant the appeal, a
hearing will be held at a mutually convenient time for the parties
involved. Upon hearing both sides, the Chief Administrative
Officer may elect to take the following action:


1. Reverse the action

2. Remand the decision to the Department Manager for
reconsideration

3. Uphold the decision of the Department Manager

4. Enact a more severe disciplinary action


After exhausting due process remedies within the department,
the employee may appeal the Chief Administrative decision to
the Board of Directors within established policies of the Board
of Directors.


The Texas Whistleblower Act prevents state or local governmental entities from
suspending, terminating, or taking an adverse personnel action against a public employee
who in good faith reports a violation of law by the governmental entity to an appropriate law
enforcement authority. Tex. Gov't Code Ann. § 554.002(a) (Vernon 2004). With respect
to Texas Whistleblower claims, the Legislature, through the Whistleblower Act, waived the
government's sovereign immunity "to the extent of liability for the relief allowed under this
chapter for a violation of this chapter." Tex. Gov't Code Ann. § 554.0035 (Vernon 2004). 
However, in its efforts to protect public employees from unlawful retaliatory actions of
governmental employers, the Legislature did not grant aggrieved public employees the right
to proceed directly to court. Section 554.006 of the Texas Government Code provides:

(a) A public employee must initiate action under the
grievance or appeal procedures of the employing state or
local governmental entity relating to suspension or
termination of employment or adverse personnel action
before suing under this chapter.


(b) The employee must invoke the applicable grievance or
appeal procedures not later than the 90th day after the
date on which the alleged violation of this chapter:

 (1) occurred; or

(2) was discovered by the employee through reasonable
diligence.

Tex. Gov't Code Ann. § 554.006 (Vernon 2004). 

 Our court previously stated that, under this provision of the Government Code, "[t]he
Whistleblowers' Act requires invocation of the appeal procedure by the public employee
bringing the claim." Univ. of Tex. Med. Branch at Galveston v. Savoy, 86 S.W.3d 782, 785
(Tex. App. - Beaumont 2002, pet. denied). The Texas Supreme Court, in University of Texas
Medical Branch at Galveston v. Barrett, 159 S.W.3d 631, 632 (Tex. 2005), also recently
stated, "Before suing under the Texas Whistleblower Act, a public employee must timely
initiate his employer's grievance or appeal procedures relating to employee discipline."

 In evaluating whether Smith's December 1, 2003 e-mail initiated the MCHD's appeal
process, we note that there are no established standards by which to judge whether a public
employee has initiated a grievance and appeal procedure. The MCHD appeal procedure
requires that its employee's notice of appeal for disciplinary actions be made in writing to
its Chief Administrative Officer, and that it be made within five days of the disciplinary
action. The MCHD's procedures do not require that the notice of an employee's appeal be
made on a particular form or contain any particular language. 

 In reviewing potential standards that might be applied to Smith's e-mail to determine
whether it constitutes an appeal of her termination, we are aware of cases interpreting Civil
Procedure Rule 47, which requires that pleadings give fair notice to opponents of the claim
involved. Tex. R. Civ. P. 47(a). In numerous cases, courts have interpreted whether various
pleadings comply with the fair notice requirement. See e.g. Southwestern Bell Telephone Co.
v. Garza, 164 S.W.3d 607, 615-17 (Tex. 2004)(finding that a petition asserting retaliatory
discharge and wrongful discharge was sufficient to give opponent fair notice of
discrimination claim); Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 896-897
(Tex. 2000)(finding that the fair notice standard examines whether opponent can ascertain 
nature and basic issues of controversy and what testimony will be relevant); Boyles v. Kerr,
855 S.W.2d 593, 601 (Tex. 1993)(finding that pleading negligent infliction of emotional
distress was insufficient to put opponent on fair notice of claim asserting grossly negligent
infliction of emotional distress); Stoner v. Thompson, 578 S.W.2d 679, 683-684 (Tex.
1979)(pleading must give fair notice of claims to opposing party); Stone v. Lawyers Title Ins.
Corp., 554 S.W.2d 183, 186 (Tex. 1977)(finding that pleadings are liberally construed, and
court looks to the pleader's intent even when some element of that cause of action is not
specifically alleged); Gulf, Colo. & S.F. Ry. Co. v. Bliss, 368 S.W.2d 594, 599 (Tex.
1963)(finding that every fact is supplied that can be reasonably inferred from what is stated,
even if an element of a cause of action is not stated).

 Additionally, in University of Texas Southwestern Medical Center at Dallas v.
Loutzenhiser, 140 S.W.3d 351 (Tex. 2004), the Texas Supreme Court considered whether
a public health care provider, which allegedly caused a birth defect, received notice of a
malpractice claim as required by the Tort Claims Act. The child's father called the health
care provider following the birth of his child and informed the provider that his child was
born with a birth defect. Loutzenhiser, 140 S.W.3d at 357. However, the father did not
notify the health care provider that he intended to claim that his child's birth defect had been
caused by care rendered by the health care provider. Id. The Supreme Court concluded that
the telephone call did not give the health care provider notice under the Tort Claims Act and
required the claimant to provide a notice that made the health care provider subjectively
aware that it was at fault for the alleged deformity. Id. at 358. However, the notice language 
of the Tort Claims Act varies from the notice language of the Whistleblower Act. Compare
Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a) (Vernon 2005) with Tex. Gov't Code
Ann. § 554.0035 (Vernon 2004).

 In the absence of a statutory standard or a standard created by an employee manual
detailing the required contents of a public employee's notice of appeal, we hold that the
notice must give the employer fair notice that the public employee desires to appeal the
employer's disciplinary decision and fair notice of the decision made by the employer from
which the employee desires to appeal. By being given such a notice, the employer will be
aware that its employee has appealed from its disciplinary decision and will know which of
its employment decisions are being made the subject of its appeal process. We further hold
that the public employee's notice of appeal must be given not later than the ninetieth day
after the date the alleged violation occurred, or was discovered by the employee through
reasonable diligence, in order to meet the Whistleblower Act's notice requirement. Tex.
Gov't Code Ann. § 554.006 (Vernon 2004). 

 The disciplinary decisions at issue in this case are Smith's reassignment and her
termination. She sent her e-mail on the eleventh day after her termination, rather than within
five days as required by MCHD's policy manual. Although Smith's e-mail was filed late
under MCHD's policy manual, her e-mail fell within the ninety day period allowed under the
Whistleblower Act. See id. Because the e-mail that arguably constitutes Smith's notice of
her disagreement with an aspect of her severance was sent within ninety days of her
termination, and within ninety days of her reassignment to the warehouse, we consider the
e-mail to be timely under the deadlines established by the Whistleblower Act. 

 We next consider whether the content of Smith's December 1, 2003 e-mail
constitutes a notice of appeal of her reassignment or termination under the MCHD
employment manual, which are the issues she complains about in her suit. Smith's
December 1, 2003 e-mail makes no reference to Smith's desire to initiate MCHD's appeal
and grievance process. Importantly, Smith does not mention that she wants the issue of her
reassignment or her termination reconsidered. In this e-mail, Smith's only request to
reconsider concerns the amount she was offered in severance pay. However, in her lawsuit
Smith makes no complaint that the MCHD's severance offer was less than that received by
similar employees under similar circumstances. 

 We conclude that no reasonably prudent employer could have been subjectively aware
that Smith, by virtue of this e-mail, desired to invoke the MCHD's disciplinary appeal
process with respect to her termination or job reassignment. We hold that Smith's e-mail did
not give the MCHD fair notice of her desire to invoke the MCHD's appeal and grievance
process with respect to her termination or reassignment. Accordingly, we hold that as a
matter of law Smith failed to initiate MCHD's grievance or appeal process with respect to
the complaints she asserts in her suit. IMMUNITY

 Recently, the Texas Supreme Court expressly declined to resolve whether the failure
of an aggrieved public employee to submit a Whistleblower claim to his employer's
grievance procedure is jurisdictional. Univ. of Tex. Med. Branch at Galveston v. Barrett, 159
S.W.3d 631, 632-33 (Tex. 2005). (1) In this case, however, we are required to decide the issue. 
If the failure to give notice and invoke grievance procedures is jurisdictional, we would
dismiss Smith's claims. On the other hand, if the Legislature intended to waive immunity
when a public employee fails to initiate her employer's grievance procedures, we would
abate Smith's claims to allow her to engage in MCHD's grievance and appeal process. 

 In general, the State is immune under the doctrine of sovereign immunity absent an
express waiver by the entity of its immunity. Miranda, 133 S.W.3d at 224. "Governmental
immunity, on the other hand, protects political subdivisions of the State, including counties,
cities, and school districts." Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3
(Tex. 2003). "Courts often use the terms sovereign immunity and governmental immunity
interchangeably." Id. 

 With respect to Whistleblower claims, the Texas Government Code contains a limited
waiver of sovereign immunity. Tex. Gov't Code Ann. § 554.0035 (Vernon 2004) provides
that, "[s]overeign immunity to suit is waived and abolished to the extent of liability" created
by the Whistleblower Act. Also, this same provision contains a waiver to suit: "A public
employee who alleges a violation of this chapter may sue the employing state or local
governmental entity for the relief provided by this chapter." Id. Thus, the Legislature
appears to have used the term sovereign immunity to refer to both types of immunity in the
Whistleblower Act. 

 In analyzing statutory waivers of immunity involving governmental entities, we note
that section 311.034 of the Code Construction Act provides: "In order to preserve the
legislature's interest in managing state fiscal matters through the appropriations process, a
statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected
by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034 (Vernon 2004).
Therefore, in evaluating the Legislature's intent, we apply the clear and unambiguous
language rule to resolve whether the Legislature waived sovereign or governmental immunity
when a public employee fails to initiate her employer's grievance and appeal process. 
Compare Tex. Gov't Code Ann. § 311.034 (interpreting statutes that waive sovereign
immunity) with Tex. Gov't Code Ann. § 554.0035 (Vernon 2004)(establishing limited
waiver of immunity under Whistleblower Act).

 "It is settled in Texas that for the Legislature to waive the State's sovereign immunity,
a statute or resolution must contain a clear and unambiguous expression of the Legislature's
waiver of immunity." Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 696 (Tex. 2003).
"Second, when construing a statute that purportedly waives sovereign immunity, we
generally resolve ambiguities by retaining immunity." Id. at 697. 

 Section 554.006(a) of the Government Code creates a limitation on a public
employee's right to file suit, and this section is found in the same chapter that creates the
public employee's rights and remedies in Whistleblower cases. It provides:

 (a) A public employee must initiate action under the grievance or
appeal procedures of the employing state or local governmental
entity relating to suspension or termination of employment or
adverse personnel action before suing under this chapter.

Tex. Gov't Code Ann. § 554.006(a) (Vernon 2004) (emphasis added). Thus, the
Legislature has expressly decreed that Whistleblower Act claimants "must" initiate the
grievance or appeal process "before suing." The Code Construction Act states that the word
"'[m]ust' creates or recognizes a condition precedent." Tex. Gov't Code Ann. § 311.016(3)
(Vernon 2005). 

 We also find guidance on the issue of whether the failure to give notice under the
Whistleblower Act is jurisdictional from the Texas Supreme Court's analysis in
Loutzenhiser. In reaching the conclusion that the failure to give proper notice under the Tort
Claim's Act was not jurisdictional, the Court contrasted the Tort Claims Act's notice
provision that the governmental unit "is entitled to receive notice" with statutes that use the
word "must." Loutzenhiser, 140 S.W.3d at 359-60. In part, because the Tort Claims Act did
not state that the claimant "must" give notice, the Supreme Court held that a claimant's
failure to give the notice required by the Tort Claims Act "does not deprive a court of subject
matter jurisdiction over an action on the claim." Id. at 362. The Court explained, "The use
of 'is entitled to' rather than 'must' - which was surely an intentional choice by the codifiers
in deciding to abandon 'shall' - is therefore some indication that the Legislature did not
intend notice to be either a condition precedent to waiver of immunity or jurisdictional." Id.
at 359. 

 Based upon the Code Construction Act, Texas law regarding waivers of immunity by
governmental entities, and the clear language of the Act, taken as a whole, we conclude that
the Legislature intended to make the initiation of the government employer's grievance
procedure mandatory. Because the Whistleblower Act does not evidence in clear and
unambiguous terms an intent to waive immunity when the public employee fails to initiate
grievance and appeal procedures, we conclude that, absent notice when required by the
employer's grievance procedures, the Legislature did not intend to waive its sovereign
immunity. 

 We recognize that "[e]ven if a statutory requirement is mandatory, this does not 
mean that compliance is necessarily jurisdictional." Helena Chemical Co. v. Wilkins, 47
S.W.3d 486, 494 (Tex. 2001)(construing a statute that required purchasers of agricultural
seeds to submit disputes to arbitration as a prerequisite to exercising its right to maintain a
legal action); Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex. 2000)(construing a statute
permitting suits for personal injury or wrongful death of a citizen of a foreign country in
Texas courts if the injured party's country has "equal treaty rights" with the United States). 
"When a statute is silent about the consequences of noncompliance, we look to the statute's
purpose to determine the proper consequences." Helena Chemical Co., 47 S.W.3d at 494. 
In Helena Chemical and Dubai, however, the statutes at issue did not require the application
of the clear and unambiguous language rule that is applicable to sovereigns. 

 In our view, the Whistleblower Act is not silent on the issue of noncompliance, as it
requires that the public employee must utilize the employer's grievance and appeal procedure
as a statutory prerequisite to filing suit. Nevertheless, we recognize that our state appellate 
courts are divided on whether the failure of a public employee to comply with statutory
prerequisites creates a jurisdictional or a non-jurisdictional defect. See Univ. of Houston v.
Barth, No. 01-04-00828-CV, 2005 WL 1539634, at *2 (Tex. App. - Houston [1st Dist.] June
30, 2005)(no pet. history)(finding notice requirement of Whistleblower Act to be 
jurisdictional defect); City of Roman Forest v. Stockman, 141 S.W.3d 805 (Tex. App. -
Beaumont 2004, no pet.)(treating statutory prerequisites as jurisdictional); Tex. S. Univ. v.
Carter, 84 S.W.3d 787, 792 (Tex. App. - Houston [1st Dist.] 2002, no pet.)(treating notice
requirement as jurisdictional); but see Univ. of Houston v. Elthon, 9 S.W.3d 351 (Tex. App. -
Houston [14th Dist.] 1999, pet. dism'd w.o.j.)(treating statutory prerequisites as non-jurisdictional defect); Castleberry Indep. Sch. Dist. v. Doe, 35 S.W.3d 777, 781 (Tex. App. -
Fort Worth 2001, pet. dism'd w.o.j.)(treating statutory prerequisites as non-jurisdictional
defect); Tex. Dep't of Mental Health & Mental Retardation v. Olofsson, 59 S.W.3d 831, 832
(Tex. App. - Austin 2001, pet. dism'd.)(treating statutory prerequisites as non-jurisdictional
defect). 

 In summary, the Legislature mandates that we adopt a narrow interpretation of
waivers of governmental immunity. Smith's claim exists solely by statutes that allow, under
limited circumstances, a remedy otherwise unavailable to public employees at common law. 
As a result, it is within the Legislature's power to define when and under what terms
immunity is waived. The statute contains a mandatory condition precedent to the employee's
filing suit, consisting of a requirement that before suing the employee invoke the public
employers' grievance and appeal procedures. Smith did not fulfill the required condition
precedent before she filed suit. Accordingly, under these circumstances, the Legislature did
not waive the MCHD's immunity from Smith's suit.FUTILITY

 Smith argues that it would have been futile for her to have engaged in the MCHD's
appeal process. Smith reasons that under the MCHD's appeal procedures, the person
reviewing her termination was "the person who made the decision to fire her and whom she
accused of committing a crime." As a result, Smith asserts that the courts should create an
exception to the statute's requirement that a public employee invoke her employer's appeal
procedures when doing so would have been futile. 

 The MCHD, on the other hand, argues that the Whistleblower Act contains no futility
exception. The MCHD cites Breaux v. City of Garland, 205 F.3d 150 (5th Cir. 2000) for the
proposition that courts have rejected the judicial creation of a futility exception for Texas
Whistleblower Act claims. 

 In Breaux, the trial court granted the City's request for judgment as a matter of law
because the employee involved, a police officer, failed to initiate an Internal Affairs
investigation into his complaints before bringing a Whistleblower suit. The police officer
argued "that the Internal Affairs process could not resolve complaints against the Chief of
Police; filing a complaint with Internal Affairs would be futile since the Chief of Police
determines whether an investigation should be initiated and ultimately reviews the results." 
Id. at 162. 

 In Breaux, the Fifth Circuit states, "This court also refuses to create a futility
exception under such circumstances." Id. at 163. The Fifth Circuit reasoned that under the
Garland Internal Affairs rules, the Chief of Police was recused from reviewing the
disciplinary decision at issue because of his conflict of interest, and as a result other decision
makers succeeded to the Chief's position for purposes of reviewing the disciplinary decision
at issue. Under these circumstances, the Fifth Circuit declined to create a futility exception
under the Texas Whistleblower Act. Id. at 164.

 In reviewing MCHD's policy manual, we find no succession rules akin to the rules
of the City of Garland's police department. But, under MCHD's appeal procedures, its
employees may appeal the Chief Administrative Officer's decision to the Board of Directors. 
Thus, there is a right under the MCHD's policies to have decisions reviewed by people who
did not make the initial decision and who could override the decision made by Hamilton. Smith also asserts that the MCHD failed to establish procedures regarding the appeal
to its Board of Directors. While the absence of specific procedures regarding an appeal to
the Board of Directors make the MCHD's rules somewhat ambiguous, we believe that Smith
could have protected her rights to file a suit: (1) by sending a letter within ninety days of the
alleged violation of the Whistleblower Act to MCHD's Board; (2) stating in the letter that
she invoked her right to appeal her termination to the Board of Directors because of 
Hamilton's alleged conflict of interest; and (3) informing the Board that she was invoking
its grievance procedures. She could have further advised that MCHD had sixty days
following her notice in which to conclude its grievance procedure. See Tex. Gov't Code
Ann. § 554.006(d) (Vernon 2004)(allowing up to sixty days for employer to render final
decision); see also Beiser v. Tomball Hosp. Auth., 902 S.W.2d 721, 724 (Tex. App. -
Houston [1st Dist.] 1995, writ denied)(finding that letter invoking grievance procedures sent
in response to unclear post-termination grievance procedures perfected employee's right to
sue). Had Smith filed such a notice, the MCHD could have decided whether to allow
Hamilton to review the decision, or someone else. Regardless of the MCHD's response to
a notice by Smith invoking an appeal of her termination, Smith's rights to sue would have
been preserved.

 By perfecting the right to sue by invoking her employer's appeal process, the public
employee retains the right to pursue her day in court. Although Smith might not have
succeeded at the initial stages of the procedure, exercising her appeal rights would not have
been futile. By doing so, Smith would have ensured that she preserved the opportunity to
have her employer's decision reviewed by an impartial fact finder.

 With respect to her reassignment and termination, Smith never initiated her
administrative remedies. Creating a futility exception under these circumstances would graft
terms onto the Whistleblower Act that were not chosen by the Legislature. 

 Finally, creating a futility exception would be redundant because the statutory
procedures already guarantee access to an impartial review. Under the circumstances here,
we decline Smith's invitation to adopt a futility exception to the Whistleblower Act's
mandate that public employees must initiate their employers' grievance and appeal
procedures to preserve their rights to sue.

 We sustain MCHD's issue that the trial court erred in denying MCHD's plea to the
jurisdiction. We reverse the trial court's order denying MCHD's plea to the jurisdiction and
render judgment dismissing Smith's claims against MCHD.

 REVERSED AND RENDERED. 

 

 ___________________________HOLLIS HORTON

 Justice

 


Submitted on October 27, 2005

Opinion Delivered December 15, 2005

Before McKeithen, C.J., Kreger and Horton, JJ.



1. At the time Barrett was decided on March 11, 2005, section 311.034 of the
Government Code stated, in its entirety: "In order to preserve the legislature's interest in
managing state fiscal matters, a statute shall not be construed as a waiver of sovereign
immunity unless the waiver is effected by clear an unambiguous language. In a statute, the
use of 'person,' as defined by Section 311.005 to include governmental entities, does not
indicate legislative intent to waive sovereign immunity unless the context of the statute
indicates no other reasonable construction." Subsequent to Barrett, the Legislature amended
section 311.034 by adding an additional sentence: "Statutory prerequisites to a suit, including
the provision of notice, are jurisdictional requirements in all suits against a governmental
entity." See Act of May 25, 2005, 79th Leg., R.S., ch.1150, 2005 Tex. Gen. Laws 3783. The
amendment's legislative history shows that the Legislature intended to clarify section
311.034. House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2988, 79th Leg., R.S.
(2005).